MISSOURI *v.* HUNTER

No. 81–1214.   Argued November 10, 1982—Decided January 19, 1983

BURGER, C. J., delivered the opinion of the Court, in which BRENNAN, WHITE, BLACKMUN, POWELL, REHNQUIST, and O'CONNOR, JJ., joined. MARSHALL, J., filed a dissenting opinion, in which STEVENS, J., joined, *post*, p. 369.

*Philip M. Koppe*, Assistant Attorney General of Missouri, argued the cause for petitioner. With him on the brief were *John Ashcroft*, Attorney General, and *Steven W. Garrett*, Assistant Attorney General.

*Gary L. Gardner* argued the cause for respondent. With him on the brief was *James W. Fletcher*.*

CHIEF JUSTICE BURGER delivered the opinion of the Court.

We granted certiorari to consider whether the prosecution and conviction of a criminal defendant in a single trial on both a charge of "armed criminal action" and a charge of first-degree robbery—the underlying felony—violates the Double Jeopardy Clause of the Fifth Amendment.

I

On the evening of November 24, 1978, respondent and two accomplices entered an A & P supermarket in Kansas City,

*Briefs of *amici curiae* urging reversal were filed by *Solicitor General Lee*, Assistant Attorney General *Jensen*, Deputy Solicitor General *Frey*, *Elliott Schulder*, and *Mervyn Hamburg* for the United States; and by *William L. Cahalan*, *Edward Reilly Wilson*, and *Timothy A. Baughman* for the Wayne County Prosecutor's Office.

Missouri. Respondent entered the store manager's office and ordered the manager, at gunpoint, to open two safes. While the manager was complying with the demands of the robbers, respondent struck him twice with the butt of his revolver. While the robbery was in progress, an employee who drove in front of the store observed the robbery and went to a nearby bank to alert an off-duty police officer. That officer arrived at the front of the store and ordered the three men to stop. Respondent fired a shot at the officer and the officer returned the fire but the trio escaped.

Respondent and his accomplices were apprehended. In addition to being positively identified by the store manager and the police officer at trial and in a lineup, respondent made an oral and written confession which was admitted in evidence. At his trial, respondent offered no direct evidence and was convicted of robbery in the first degree, armed criminal action, and assault with malice.

Missouri's statute proscribing robbery in the first degree, Mo. Rev. Stat. § 560.120 (1969), provides:

> "Every person who shall be convicted of feloniously taking the property of another from his person, or in his presence, and against his will, by violence to his person, or by putting him in fear of some immediate injury to his person; or who shall be convicted of feloniously taking the property of another from the person of his wife, servant, clerk or agent, in charge thereof, and against the will of such wife, servant, clerk or agent by violence to the person of such wife, servant, clerk or agent, or by putting him or her in fear of some immediate injury to his or her person, shall be adjudged guilty of robbery in the first degree."

Missouri Rev. Stat. § 560.135 (Supp. 1975) prescribes the punishment for robbery in the first degree and provides in pertinent part:

"Every person convicted of robbery in the first degree by means of a dangerous and deadly weapon and every person convicted of robbery in the first degree by any other means shall be punished by imprisonment by the division of corrections for not less than five years . . . ."

Missouri Rev. Stat. § 559.225 (Supp. 1976) proscribes armed criminal action and provides in pertinent part:

"[A]ny person who commits any felony under the laws of this state by, with, or through the use, assistance, or aid of a dangerous or deadly weapon is also guilty of the crime of armed criminal action and, upon conviction, shall be punished by imprisonment by the division of corrections for a term of not less than three years. The punishment imposed pursuant to this subsection shall be in addition to any punishment provided by law for the crime committed by, with, or through the use, assistance, or aid of a dangerous or deadly weapon. No person convicted under this subsection shall be eligible for parole, probation, conditional release or suspended imposition or execution of sentence for a period of three calendar years."

Pursuant to these statutes respondent was sentenced to concurrent terms of (a) 10 years' imprisonment for the robbery; (b) 15 years for armed criminal action; and (c) to a consecutive term of 5 years' imprisonment for assault, for a total of 20 years.

On appeal to the Missouri Court of Appeals, respondent claimed that his sentence for both robbery in the first degree and armed criminal action violated the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution made applicable to the states by the Fourteenth Amendment. The Missouri Court of Appeals agreed and reversed respondent's conviction and 15-year sentence for

armed criminal action. 622 S. W. 2d 374 (1981). The Court of Appeals relied entirely upon the holding of the Missouri Supreme Court opinions in State v. Haggard, 619 S. W. 2d 44 (1981); Sours v. State, 593 S. W. 2d 208 (Sours I), vacated and remanded, 446 U. S. 962 (1980); and Sours v. State, 603 S. W. 2d 592 (1980) (Sours II), cert. denied, 449 U. S. 1131 (1981). The State's timely alternative motion for rehearing or transfer to the Missouri Supreme Court was denied by the Court of Appeals on September 15, 1981. The Missouri Supreme Court denied review on November 10, 1981.

We granted certiorari, 456 U. S. 914 (1982), and we vacate and remand.

## II

The Missouri Supreme Court first adopted its challenged approach to the Double Jeopardy issue now before us in Sours I, supra.[1] In that case, as here, the defendant was convicted and sentenced separately for robbery in the first degree and armed criminal action based on the robbery. The Missouri Supreme Court concluded that under the test announced in Blockburger v. United States, 284 U. S. 299 (1932), armed criminal action and any underlying offense are the "same offense" under the Fifth Amendment's Double Jeopardy Clause. That court acknowledged that the Missouri Legislature had expressed its clear intent that a de-

---

[1] In Sours I, the Missouri Supreme Court noted that the double jeopardy provision in the Missouri Constitution, Art. I, § 19, "has been interpreted to apply 'only where there has been an acquittal of the defendant by the jury.'" 593 S. W. 2d, at 211, quoting Murray v. State, 475 S. W. 2d 67, 70 (Mo. 1972). Clearly, it is the Double Jeopardy Clause of the Fifth Amendment, and not Missouri's double jeopardy provision, that is relied upon by the Missouri Supreme Court in these cases.

When the issue first arose, the Missouri Supreme Court took the position that multiple convictions for both armed criminal action and the underlying felony did not violate the Double Jeopardy Clause. State v. Treadway, 558 S. W. 2d 646 (1977), cert. denied, 439 U. S. 838 (1978); State v. Valentine, 584 S. W. 2d 92 (1979).

fendant should be subject to conviction and sentence under the armed criminal action statute in addition to any conviction and sentence for the underlying felony. 593 S. W. 2d, at 216. The court nevertheless held that the Double Jeopardy Clause "prohibits imposing punishment for both armed criminal action and for the underlying felony." *Id.*, at 223 (footnote omitted). It then set aside the defendant's conviction for armed criminal action.[2]

When the State sought review here in *Sours I*, we remanded the case for reconsideration in light of our holding in *Whalen* v. *United States*, 445 U. S. 684 (1980). *Missouri* v. *Sours*, 446 U. S. 962 (1980). On remand, in *Sours II, supra,* the Missouri Supreme Court adhered to its previous ruling that armed criminal action and the underlying felony are the "same offense" and that the Double Jeopardy Clause bars separate punishment of a defendant for each offense, notwithstanding the acknowledged intent of the legislature to impose two separate punishments for the two defined offenses.[3]

Most recently, in *State* v. *Haggard, supra,* the Missouri Supreme Court reexamined its decisions in *Sours I, supra,* and *Sours II, supra,* in light of our 1981 holding in *Albernaz* v. *United States*, 450 U. S. 333.[4] The Missouri court, however, remained unpersuaded, stating:

[2] The Missouri Supreme Court has recently made clear that "in order to establish uniformity of sentencing in *Sours* type cases, the armed criminal action sentence should be reversed in all instances. [W]e are convinced that in the historical background of the armed criminal action statute, the net effect of such statute is to enhance (in pure sense of enlarging) the penalty assessed for the underlying felony . . . . The attempt to enhance or enlarge having failed because of being phrased in terms of separate crime or offense and in our opinion thereby violative of the constitutional prohibition against double jeopardy, we are left with only the penalty assessed on the underlying felony." *State* v. *Kane*, 629 S. W. 2d 372, 377 (1982).

[3] The State's petition for writ of certiorari in *Sours II* was denied. JUSTICE BLACKMUN and JUSTICE REHNQUIST would have dismissed the petition as moot. *Missouri* v. *Sours*, 449 U. S. 1131 (1981).

[4] Subsequent to the Missouri Supreme Court's decision on remand in *Sours II*, the Missouri Supreme Court, as well as the three districts of the

"Until such time as the Supreme Court of the United States declares clearly and unequivocally that the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution does not apply to the legislative branch of government, we cannot do other than what we perceive to be our duty to refuse to enforce multiple punishments for the same offense arising out of a single transaction." 619 S. W. 2d, at 51.

This view manifests a misreading of our cases on the meaning of the Double Jeopardy Clause of the Fifth Amendment; we need hardly go so far as suggested to decide that a legislature constitutionally can prescribe cumulative punishments for violation of its first-degree robbery statute and its armed criminal action statute.

### III

The Double Jeopardy Clause is cast explicitly in terms of being "twice put in jeopardy." We have consistently interpreted it "'to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense.'" *Burks* v. *United States*, 437 U. S. 1, 11 (1978), quoting *Green* v. *United States*, 355 U. S. 184, 187 (1957). Because respondent has been subjected to only one trial, it is not contended that his right to be free from multiple trials for the same offense has been violated. Rather, the Missouri court vacated respondent's conviction for armed

---

Missouri Court of Appeals, began reversing convictions for armed criminal action in a number of cases. The State, in most instances, sought review by certiorari from this Court. In response to those petitions, this Court repeatedly granted certiorari and vacated decisions that had reversed convictions for armed criminal action on the basis of *Sours II*. See, *e. g., Missouri* v. *Counselman*, 450 U. S. 990 (1981). The orders from this Court in every case read substantially the same: "Certiorari granted, judgments vacated, and cases remanded for further consideration in light of *Albernaz* v. *United States, ante*, p. 333." *Ibid*. The Missouri Supreme Court chose *Haggard* "as the vehicle for accomplishing the reexamination 'in light of *Albernaz*.'" 619 S. W. 2d, at 49.

criminal action because of the statements of this Court that the Double Jeopardy Clause also "protects against multiple punishments for the same offense." *North Carolina* v. *Pearce*, 395 U. S. 711, 717 (1969). Particularly in light of recent precedents of this Court, it is clear that the Missouri Supreme Court has misperceived the nature of the Double Jeopardy Clause's protection against multiple punishments. With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.

In *Whalen* v. *United States, supra,* we addressed the question whether cumulative punishments for the offenses of rape and of killing the same victim in the perpetration of the crime of rape was contrary to federal statutory and constitutional law. A divided Court relied on *Blockburger* v. *United States*, 284 U. S. 299 (1932), in holding that the two statutes in controversy proscribed the "same" offense. The opinion in *Blockburger* stated:

> "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id.*, at 304.

In *Whalen* we also noted that *Blockburger* established a rule of statutory construction in these terms:

> "The assumption underlying the rule is that Congress *ordinarily* does not intend to punish the same offense under two different statutes. Accordingly, where two statutory provisions proscribe the 'same offense,' they are construed not to authorize cumulative punishments *in the absence of a clear indication of contrary legislative intent.*" 445 U. S., at 691–692 (emphasis added).

We went on to emphasize the qualification on that rule:

> "[W]here the offenses are the same . . . cumulative sentences are not permitted, *unless elsewhere specially authorized by Congress.*" *Id.*, at 693 (emphasis added).

It is clear, therefore, that the result in *Whalen* turned on the fact that the Court saw no "clear indication of contrary legislative intent." Accordingly, under the rule of statutory construction, we held that cumulative punishment could not be imposed under the two statutes.

In *Albernaz* v. *United States*, 450 U. S. 333 (1981), we addressed the issue whether a defendant could be cumulatively punished in a single trial for conspiracy to import marihuana and conspiracy to distribute marihuana. There, in contrast to *Whalen*, we concluded that the two statutes did not proscribe the "same" offense in the sense that "'each provision requires proof of a fact [that] the other does not.'" 450 U. S., at 339, quoting *Blockburger, supra,* at 304. We might well have stopped at that point and upheld the petitioners' cumulative punishments under the challenged statutes since cumulative punishment can presumptively be assessed after conviction for two offenses that are not the "same" under *Blockburger.* See, *e. g., American Tobacco Co.* v. *United States*, 328 U. S. 781 (1946). However, we went on to state that because

> "[t]he *Blockburger* test is a 'rule of statutory construction,' and because it serves as a means of discerning congressional purpose *the rule should not be controlling where, for example, there is a clear indication of contrary legislative intent." Albernaz* v. *United States*, 450 U. S., at 340 (emphasis added).

We found "[n]othing . . . in the legislative history which . . . discloses an intent contrary to the presumption which should be accorded to these statutes after application of the *Blockburger* test." *Ibid.* We concluded our discussion of the impact of clear legislative intent on the *Whalen* rule of statutory construction with this language:

"[T]he question of what punishments are constitutionally permissible is no different from the question of what punishments the Legislative Branch intended to be imposed. *Where Congress intended, as it did here, to impose multiple punishments, imposition of such sentences does not violate the Constitution.*" 450 U. S., at 344 (emphasis added) (footnote omitted).

Here, the Missouri Supreme Court has construed the two statutes at issue as defining the same crime. In addition, the Missouri Supreme Court has recognized that the legislature intended that punishment for violations of the statutes be cumulative. We are bound to accept the Missouri court's construction of that State's statutes. See *O'Brien* v. *Skinner*, 414 U. S. 524, 531 (1974). However, we are not bound by the Missouri Supreme Court's legal conclusion that these two statutes violate the Double Jeopardy Clause, and we reject its legal conclusion.

Our analysis and reasoning in *Whalen* and *Albernaz* lead inescapably to the conclusion that simply because two criminal statutes may be construed to proscribe the same conduct under the *Blockburger* test does not mean that the Double Jeopardy Clause precludes the imposition, in a single trial, of cumulative punishments pursuant to those statutes. The rule of statutory construction noted in *Whalen* is not a constitutional rule requiring courts to negate clearly expressed legislative intent. Thus far, we have utilized that rule only to limit a federal court's power to impose convictions and punishments when the will of Congress is not clear. Here, the Missouri Legislature has made its intent crystal clear. Legislatures, not courts, prescribe the scope of punishments.[5]

Where, as here, a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the "same" conduct under *Block-*

---

[5] This case presents only issues under the Double Jeopardy Clause.

*burger*, a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial.

Accordingly, the judgment of the Court of Appeals of Missouri, Western District, is vacated, and the case is remanded for further proceedings not inconsistent with this opinion.

*So ordered.*

JUSTICE MARSHALL, with whom JUSTICE STEVENS joins, dissenting.

The Double Jeopardy Clause forbids either multiple prosecutions or multiple punishment for "the same offence." See, *e. g., North Carolina* v. *Pearce*, 395 U. S. 711, 717–718 (1969); *United States* v. *Benz*, 282 U. S. 304, 307–308 (1931); *Ex parte Lange*, 18 Wall. 163, 169, 173–175 (1874). Respondent was convicted of both armed criminal action and the lesser included offense of first-degree robbery, and he was sentenced for both crimes. Had respondent been tried for these two crimes in separate trials, he would plainly have been subjected to multiple prosecutions for "the same offence" in violation of the Double Jeopardy Clause.[1] See *Harris* v. *Oklahoma*, 433 U. S. 682 (1977) *(per curiam); Brown* v. *Ohio*, 432 U. S. 161 (1977). For the reasons stated below, I do not believe that the phrase "the same offence" should be interpreted to mean one thing for purposes of the prohibition against multiple prosecutions and something else for purposes of the prohibition against multiple punishment.

First-degree robbery and armed criminal action constitute the same offense under the test set forth in *Blockburger* v. *United States*, 284 U. S. 299, 304 (1932). To punish respondent for first-degree robbery, the State was not required

---

[1] The Double Jeopardy Clause would have forbidden multiple prosecutions regardless of which charge was brought first, and regardless of whether the first trial ended in a conviction or an acquittal.

to prove a single fact in addition to what it had to prove to punish him for armed criminal action.[2]   The punishment imposed for first-degree robbery was not predicated upon proof of any act, state of mind, or result different from that required to establish armed criminal action.   Respondent was thus punished twice for the elements of first-degree robbery: once when he was convicted and sentenced for that crime, and again when he was convicted and sentenced for armed criminal action.

A State has wide latitude to define crimes and to prescribe the punishment for a given crime.   For example, a State is free to prescribe two different punishments (*e. g.*, a fine and a prison term) for a single offense.   But the Constitution does not permit a State to punish as two crimes conduct that constitutes only one "offence" within the meaning of the Double Jeopardy Clause.   For whenever a person is subjected to the risk that he will be convicted of a crime under state law, he is "put in jeopardy of life or limb."   If the prohibition against being "twice put in jeopardy" for "the same offence" is to have any real meaning, a State cannot be allowed to con-

---

[2] Under *Blockburger* "the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."   284 U. S., at 304.   Missouri law defines first-degree robbery as the felonious taking of property of another from his person, or in his presence, by violence or threat of violence.   Mo. Rev. Stat. § 560.120 (1969).   Armed criminal action is the commission of a felony with a dangerous or deadly weapon.   Mo. Rev. Stat. § 559.225 (Supp. 1976).   Although the underlying felony necessary to obtain a conviction for armed criminal action need not be first-degree robbery, the Missouri courts have properly recognized that the theoretical possibility that the underlying felony could be some felony other than first-degree robbery is irrelevant for purposes of the Double Jeopardy Clause where no other underlying felony is in fact charged.   *Sours* v. *State*, 593 S. W. 2d 208, 217–220 (Mo.), vacated and remanded, 446 U. S. 962 (1980).   Cf. *Harris* v. *Oklahoma*, 433 U. S. 682 (1977) (defendant cannot be subjected to multiple prosecutions for felony murder and robbery with firearms where the felony underlying the felony-murder charge was robbery with firearms).   Petitioner makes no argument to the contrary.

vict a defendant two, three, or more times simply by enacting separate statutory provisions defining nominally distinct crimes. If the Double Jeopardy Clause imposed no restrictions on a legislature's power to authorize multiple punishment, there would be no limit to the number of convictions that a State could obtain on the basis of the same act, state of mind, and result. A State would be free to create substantively identical crimes differing only in name, or to create a series of greater and lesser included offenses, with the first crime a lesser included offense of the second, the second a lesser included offense of the third, and so on.[3]

Contrary to the assertion of the United States in its *amicus* brief, Brief for United States as *Amicus Curiae* 18–19, the entry of two convictions and the imposition of two sentences cannot be justified on the ground that the legislature could have simply created one crime but prescribed harsher punishment for that crime. This argument incorrectly assumes that the total sentence imposed is all that matters, and that the number of convictions that can be obtained is of no

---

[3] Although the majority relies on a passage in *Albernaz* v. *United States*, 450 U. S. 333, 344 (1981), which states that cumulative punishment does not violate the Constitution so long as it is authorized by the legislature, *ante*, at 367–368, that passage is clearly dicta. The Court held in *Albernaz* that the two crimes at issue did not constitute the same offense under the *Blockburger* test, 450 U. S., at 339, because each required proof of a fact which the other did not. *Albernaz* simply did not involve the question whether the Double Jeopardy Clause forbids multiple punishment for two crimes that do constitute the same offense under the *Blockburger* test.

*Whalen* v. *United States*, 445 U. S. 684 (1980), on which the Court also relies, *ante*, at 366–367, likewise did not decide this question. *Whalen* held that, "in the absence of a clear indication of contrary legislative intent," 445 U. S., at 692, a defendant cannot be subjected to multiple punishment for two crimes that constitute the same offense under *Blockburger*. The Court had no occasion to decide, and it did not decide, whether multiple punishment for two such crimes *can* be imposed if clearly authorized by the legislature. See 445 U. S., at 689 ("The Double Jeopardy Clause *at the very least* precludes federal courts from imposing consecutive sentences unless authorized by Congress to do so") (emphasis supplied).

relevance to the concerns underlying the Double Jeopardy Clause.

When multiple charges are brought, the defendant is "put in jeopardy" as to each charge. To retain his freedom, the defendant must obtain an acquittal on all charges; to put the defendant in prison, the prosecution need only obtain a single guilty verdict. The prosecution's ability to bring multiple charges increases the risk that the defendant will be convicted on one or more of those charges. The very fact that a defendant has been arrested, charged, and brought to trial on several charges may suggest to the jury that he must be guilty of at least one of those crimes. Moreover, where the prosecution's evidence is weak, its ability to bring multiple charges may substantially enhance the possibility that, even though innocent, the defendant may be found guilty on one or more charges as a result of a compromise verdict. The submission of two charges rather than one gives the prosecution "the advantage of offering the jury a choice—a situation which is apt to induce a doubtful jury to find the defendant guilty of the less serious offense rather than to continue the debate as to his innocence." *Cichos* v. *Indiana*, 385 U. S. 76, 81 (1966) (Fortas, J., dissenting from dismissal of certiorari).[4]

The Government's argument also overlooks the fact that, quite apart from any sentence that is imposed, each separate criminal conviction typically has collateral consequences, in both the jurisdiction in which the conviction is obtained and in other jurisdictions. See *Benton* v. *Maryland*, 395 U. S. 784, 790 (1969); *Sibron* v. *New York*, 392 U. S. 40, 53–58

---

[4] It is true that compromise is possible even under the familiar procedure whereby a lesser included offense is submitted along with a greater offense and the jury is told that it can convict on only one charge. Under the usual procedure, however, the risk of an irrational compromise is reduced by the rule that a lesser included offense will not be submitted to the jury if the element that distinguishes the two offenses is not in dispute. See, *e. g.*, *Sansone* v. *United States*, 380 U. S. 343 (1965); *United States* v. *Tsanas*, 572 F. 2d 340, 345–346 (CA2), cert. denied, 435 U. S. 995 (1978).

(1968). The number of convictions is often critical to the collateral consequences that an individual faces. For example, a defendant who has only one prior conviction will generally not be subject to sentencing under a habitual offender statute.

Furthermore, each criminal conviction itself represents a pronouncement by the State that the defendant has engaged in conduct warranting the moral condemnation of the community. See Hart, The Aims of the Criminal Law, 23 Law & Contemp. Prob. 401, 404–405 (1958). Because a criminal conviction constitutes a formal judgment of condemnation by the community, each additional conviction imposes an additional stigma and causes additional damage to the defendant's reputation. See *O'Clair* v. *United States*, 470 F. 2d 1199, 1203 (CA1 1972), cert. denied, 412 U. S. 921 (1973).

A statutory scheme that permits the prosecution to obtain two convictions and two sentences therefore cannot be regarded as the equivalent of a statute that permits only a single conviction, whether or not that single conviction can result in a sentence of equal severity. The greater the number of possible convictions, the greater the risk that the defendant faces. The defendant is "put in jeopardy" with respect to each charge against him.

The very fact that the State could simply convict a defendant such as respondent of one crime and impose an appropriate punishment for that crime demonstrates that it has no legitimate interest in seeking multiple convictions and multiple punishment. The creation of multiple crimes serves only to strengthen the prosecution's hand. It advances no valid state interest that could not just as easily be achieved without bringing multiple charges against the defendant.

In light of these considerations, the Double Jeopardy Clause cannot reasonably be interpreted to leave legislatures completely free to subject a defendant to the risk of multiple punishment on the basis of a single criminal transaction. In the context of multiple prosecutions, it is well established

that the phrase "the same offence" in the Double Jeopardy Clause has independent content—that two crimes that do not satisfy the *Blockburger* test constitute "the same offence" under the Double Jeopardy Clause regardless of the legislature's intent to treat them as separate offenses.[5] Otherwise multiple prosecutions would be permissible whenever authorized by the legislature. The Court has long assumed that the *Blockburger* test is also a rule of constitutional stature in multiple-punishment cases,[6] and I would not hesitate to hold that it is. If the prohibition against being "twice put in jeopardy" for "the same offence" is to provide meaningful protection, the phrase "the same offence" must have content independent of state law in both contexts. Since the Double Jeopardy Clause limits the power of all branches of government, including the legislature, there is no more reason to treat the test as simply a rule of statutory construction in multiple-punishment cases than there would be in multiple-prosecution cases.

I respectfully dissent.

---

[5] The test later set forth in *Blockburger* was adopted by this Court in the context of multiple prosecutions nearly a century ago. See *In re Nielsen*, 131 U. S. 176, 186–188 (1889). See also *In re Snow*, 120 U. S. 274 (1887).

[6] *Blockburger* itself was a multiple-punishment case. In rejecting the defendant's double jeopardy claim on the ground that each crime required proof of a fact which the other did not, 284 U. S., at 304, the Court relied on Justice Brandeis' opinion for the Court in *Albrecht* v. *United States*, 273 U. S. 1 (1927), in which he had expressly analyzed a claim of multiple punishment in constitutional rather than statutory terms and rejected the claim because it would have been possible to commit each crime without committing the other, *id.*, at 11.