**UNITED STATES of America, Appellee,**

v.

**William DOFFIN, Jr., Ronald Newton Burchard, and Clay C. Crews, Appellants.**

No. 85–2212.

United States Court of Appeals, Eighth Circuit.

Submitted April 7, 1986.

Decided May 21, 1986.

Kermit L. Dunahoo, Des Moines, Iowa, for appellants.

Joseph S. Beck, Asst. U.S. Atty., Des Moines, Iowa, and Janis Kockritz, Washington, D.C., for appellee.

Before HEANEY, JOHN R. GIBSON and FAGG, Circuit Judges.

PER CURIAM.

William Doffin, Jr., Ronald Newton Burchard, and Clay C. Crews (appellants) appeal their convictions for armed bank robbery in violation of 18 U.S.C. § 2113(d). They also appeal the district court's enhancement of their sentences for use of a

---

firearm during the commission of a crime of violence in violation of 18 U.S.C. § 924(c). Each appellant was sentenced to imprisonment of ten years on his conviction for armed bank robbery and an additional five years under the enhancement provision of section 924(c). For reversal, appellants argue (1) that the initial stop of their vehicle and their arrest were unlawful, and thus all evidence found as a result of the stop should have been suppressed, and (2) that their additional sentence under section 924(c) violated the double jeopardy clause. We reject these arguments and affirm the judgment of the district court.

The suppression hearing produced the following facts. On the morning of July 9, 1985, two armed white males wearing ski masks robbed the State Bank of Bussey in Lovilia, Iowa. A bank teller told a Monroe County deputy sheriff, Kevin Duncan, that she thought one of the robbers was the same man who had robbed the bank in May 1985; Duncan knew that the earlier robber had fled westward. After construction workers on the north, south, and east sides of the bank told Duncan that they had seen nothing suspicious, he concluded that these robbers were probably traveling west and he broadcast that information over the police radio.

The county roads running west from Lovilia were in a sparsely populated area near a coal mine and were normally used only by mine employees, truck drivers, and local traffic. These roads led to Highway 34, a major east-west highway across the state.

Around the time of Duncan's broadcast, two additional pieces of information were relayed over the radio regarding events near county road H–20 west of Lovilia: a car was burning, and a trucker had reported seeing a person wearing a ski mask lying alongside the road. The first report was significant because of the known practice of robbers to abandon their initial getaway car for a second vehicle away from the scene.

A state trooper, James Hogan, heard all of these radio transmissions and stopped a rural route mail carrier west of Lovilia.

The mail carrier reported that about ten minutes earlier on H–20 a westbound out-of-state vehicle had passed him at a high rate of speed. The mail carrier thought the car was a Buick and described it as a big, white over yellow 1960's model, with license plates of black numerals on a white background. He also stated that the car had at least two occupants. Trooper Hogan then relayed this vehicle description over the radio.

Trooper Brian Shelly heard this broadcast and met the described car heading west on Highway 34. Shelly turned his car around, followed the other vehicle, and radioed for assistance. When the Lucas County sheriff arrived, he and Shelly stopped the Buick between their cars. Shelly left his car with his shotgun pointed at the driver and told the three occupants to put their arms out of the car windows.

Appellant Burchard complied with Shelly's orders to turn off the ignition, throw the key from the car, and get out with his hands up. In checking Burchard's claim of identification in his back pocket, Shelly found only a social security card. When Shelly asked where he was coming from, Burchard responded, "Nebraska," although the car had proceeded from the opposite direction. Shelly then ordered Burchard to lie face down on the pavement.

Appellants Crews and Doffin, in turn, were ordered out of the car and face down on the road. All three were checked for weapons and were found to be carrying ammunition. During this time, other officers arrived on the scene. As appellants were being moved toward the sheriff's car, Shelly passed by the Buick and saw a rifle in the backseat floorboard and a holstered pistol on a paper sack in the front passenger seat. Appellants were then handcuffed and placed in the sheriff's car.

On the basis of all the information available to law enforcement officers at the time, the district court determined that the officers were justified in making an investigative stop of the Buick and that the officers' precautions at the scene were appropriate.

A dual inquiry determines the reasonableness of an investigative stop: "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio,* 392 U.S. 1, 19–20, 88 S.Ct. 1868, 1878–79, 20 L.Ed.2d 889 (1968). As to the first part of the inquiry, officers may stop a moving vehicle to investigate a reasonable suspicion, based on specific and articulable facts, that its occupants are or have been involved in criminal activity. *United States v. Hensley,* 469 U.S. 221, 105 S.Ct. 675, 679, 681, 83 L.Ed.2d 604 (1985).

■ Here, the district court found that the facts indicating the robbers had headed west, plus the presence of an out-of-state car speeding westward on a rural county road normally used only by local traffic (and on which a burning car was found), supported a reasonable suspicion that the car's occupants were connected with the bank robbery. We conclude the district court's factual findings are not clearly erroneous and support a determination that the investigative stop was justified under the circumstances. *See United States v. Martin,* 706 F.2d 263, 265 (8th Cir.1983).

As to the second part of the *Terry* inquiry, the proper scope of an investigative detention depends upon the purposes of the stop and requires using the least intrusive means reasonably available to achieve those purposes. *United States v. Jones,* 759 F.2d 633, 642 (8th Cir.) (citing *Florida v. Royer,* 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983)), *cert. denied,* —— U.S. ——, 106 S.Ct. 113, 88 L.Ed.2d 92 (1985). Officers may check for weapons if they reasonably believe the suspects are armed. *Terry v. Ohio,* 392 U.S. at 24, 88 S.Ct. at 1881. The officers may take such additional steps as are "reasonably necessary to protect their personal safety and to maintain the status quo during the course of the stop." *United States v. Hensley,* 105 S.Ct. at 684. "An action tantamount to arrest has taken place if the officers' conduct is more intrusive than necessary" for the limited purposes of the investigative

stop. *United States v. Rose,* 731 F.2d 1337, 1342 (8th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 326, 83 L.Ed.2d 263 (1984).

■ Here, the purpose of the two officers who made the stop was to investigate the possible involvement of the Buick's three occupants in an armed bank robbery that had just occurred. We believe that the officers' blocking of the vehicle, approach with guns drawn, limited questioning, and weapons search procedures were reasonable measures under the circumstances. Contrary to appellants' argument, the officers' conduct did not elevate the investigative stop into an arrest without probable cause. *See United States v. Jones,* 759 F.2d at 637–41. As the district court noted, the discovery of ammunition on appellants' persons and of firearms in plain view in their car then provided probable cause for appellants' arrest. We conclude that the district court did not err in denying defendants' motion to suppress evidence seized after the valid stop and lawful arrests.

■ Appellants also contend that the district court should not have sentenced them under the enhanced penalty provision of section 924(c). They argue that the mandatory penalty for use of a firearm during a crime of violence cannot apply to the federal bank robbery statute, 18 U.S.C. § 2113(d), which already provides for enhanced punishment if the offense is committed with a dangerous weapon.

Appellants' argument must fail. The Supreme Court clarified the double jeopardy prohibition against multiple punishments for the same offense in *Missouri v. Hunter,* 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983). "With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Id.* at 366, 103 S.Ct. at 678. Further, where Congress "specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct under *Blockburger,* * * * the prosecutor may

seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial." *Id.* at 368–69, 103 S.Ct. at 679.

Authorization for cumulative punishment under 18 U.S.C. §§ 2113(d) and 924(c) is clearly indicated in the firearms statute:

Whoever, during and in relation to any crime of violence, *including* a crime of violence which provides for an *enhanced* punishment if committed by the use of a deadly or dangerous weapon or device, * * * uses or carries a firearm, *shall, in addition to* the punishment provided for such crime of violence, be sentenced to imprisonment for five years.

18 U.S.C. § 924(c) (emphasis added). Thus, no double jeopardy violation occurred and the district court properly denied appellants' motion to dismiss.

Affirmed.