**UNITED STATES of America, Appellee,**

v.

**Tony J. HALFORD, Appellant.**

**No. 91–1246.**

United States Court of Appeals, Eighth Circuit.

Submitted June 14, 1991.

Decided Oct. 25, 1991.

Dean Stower and Paul H. Rosenberg, Des Moines, Iowa, for appellant.

Mary C. Luxa, Des Moines, Iowa, argued (Gene W. Shephard and Linda R. Read, on brief), for appellee.

Before ARNOLD, Circuit Judge, RONEY,* Senior Circuit Judge, and WOLLMAN, Circuit Judge.

WOLLMAN, Circuit Judge.

Tony Halford appeals his conviction and sentence for armed robbery in violation of 18 U.S.C. § 2113(a) & (d) and use of a firearm in violation of 18 U.S.C. § 924(c). We affirm.

## I.

On April 30, 1990, Halford entered the Mid–America Savings Bank in Des Moines, Iowa, carrying a blue bag. He handed a note to a teller, Mia Walker, demanding she give him all the money in her drawer. He backed up his demand by pointing a small black handgun at Walker. He left the bank with more than $6,000.00.

Less than nine hours later, two police officers stopped Halford's vehicle because it had only one working headlight. When the officers, Lt. James Tuma and Officer Mike Brown, approached the vehicle, Lt. Tuma noticed a pipe, which was smaller than that normally used by tobacco smokers, lying in a plastic bag behind the passenger seat. He advised Officer Brown that he had found a "dope pipe." The officers then searched the vehicle, finding within three marijuana seeds, a small black .22 caliber handgun, and a blue duffel bag containing $5,800.00. The serial numbers on several of the bills matched those of bills stolen from Mid–America.

After Halford was indicted for violating 18 U.S.C. § 2113(a) & (d) and 18 U.S.C. § 924(c), he moved to suppress the evidence found in the search of his vehicle. The district court[1] denied the motion, finding that the officers had probable cause to search the vehicle after seeing the marijuana pipe.

Halford and the government differ as to whether their negotiations resulted in a plea agreement. Halford's first attorney, George Appleby, testified that he had negotiated with Assistant United States Attorney Joseph Beck before Halford was indicted. Appleby testified that Beck had offered to drop the firearm charge and not object to a two-level reduction for acceptance of responsibility in exchange for a guilty plea to the robbery charge, and that Halford had rejected the offer. Appleby also testified that he and Beck had conducted further negotiations after Halford was indicted. During these subsequent negotiations the government made "something of an offer," which Halford also rejected as unsatisfactory. After the suppression hearing, Halford's second attorney informed Beck that Halford wished to accept the government's offer. Beck responded that no plea offer had ever been made and maintained that he had only discussed the possibility of a plea agreement. The district court found that there had never been a firm plea offer, let alone a plea agreement; at most, there had been plea discussions.

A jury found Halford guilty on both

* The HONORABLE PAUL H. RONEY, United States Senior Circuit Judge for the Eleventh Circuit, sitting by designation.

1. The Honorable William C. Stuart, United States Senior District Judge for the Southern District of Iowa.

counts. The district court[2] imposed a sentence of thirty-three months for the robbery, the minimum prescribed by the Sentencing Guidelines for Halford's offense level[3] and criminal history, and a consecutive sentence of sixty months for use of a firearm. The district court refused Halford's request that it depart downward from the Guidelines, finding that it had "no legal basis" to do so.

## II.

Halford raises several arguments on appeal. First, he contends that the district court should have enforced the plea agreement because he accepted the government's offer before it was validly withdrawn.

 Whether the government has made a promise in the context of a plea agreement is a factual question. *United States v. Ball*, 646 F.2d 340, 340 (8th Cir. 1981). We will overturn such a finding only if it is clearly erroneous. *Id.; see also United States v. Helmandollar*, 852 F.2d 498, 501 (9th Cir.1988) (existence of plea agreement is question of fact). After reviewing the record, we find no error in the district court's conclusion that the government never made a firm offer to enter a plea agreement.

 Halford argues that the district court sentenced him improperly. He bases his argument on two grounds. First, he argues that his sentence for violating both section 2113(a) & (d) and section 924(c) constitutes double jeopardy because it effectively imposes two penalties for the same conduct. Second, he argues that this sentencing scheme creates a potential disparity that Congress did not intend. Halford maintains that the district court did not understand that it had the authority to depart downward to eliminate this dispari-

ty. We address these alternative grounds in turn.

We rejected Halford's double jeopardy argument in *United States v. Doffin*, 791 F.2d 118 (8th Cir.) (per curiam), *cert. denied*, 479 U.S. 861, 107 S.Ct. 210, 93 L.Ed.2d 140 (1986). There, we approved separate sentences for a bank robber convicted of violating both section 2113(d) and section 924(c), stating that

"[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." Further, where Congress "specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct ... the trial court or jury may impose cumulative punishment under such statutes in a single trial."

*Doffin*, 791 F.2d at 120–21 (quoting *Missouri v. Hunter*, 459 U.S. 359, 366 & 368–69, 103 S.Ct. 673, 678, 679–80, 74 L.Ed.2d 535 (1983)). Since section 924(c) applies even where another criminal statute provides for enhanced punishment for using a weapon, Congress clearly authorized the cumulative punishment. Thus, there was no violation of double jeopardy. *Id.* at 121.

Halford, however, attempts to distinguish *Doffin*. He argues that Congress intended only that section 924(c) establish a mandatory penalty during the three-year period between the enactment of the Sentencing Reform Act in 1984 and its effective date in 1987. Halford divines this intent from the fact that certain provisions of section 924(c), such as the prohibition of parole, became superfluous after the Sentencing Reform Act took effect.

We reject this argument. Congress was aware of sections 2113(a) & (d) and 924(c)

---

**2.** The Honorable Harold D. Vietor, Chief Judge, United States District Court for the Southern District of Iowa.

**3.** Applying U.S.S.G. § 2B3.1, the district court calculated Halford's offense level to be twenty, consisting of a base offense level of twenty, plus two for robbing a financial institution, and minus two for accepting responsibility. The total offense level did not include a three-level increase for using a weapon, as provided for in U.S.S.G. § 2B3.1(b)(2).

when it reviewed the Sentencing Reform Act before it took effect. Nonetheless, it did not amend section 924(c) to eliminate the possibility of cumulative punishment. To the contrary, it approved the application of section 924(c) in conjunction with a separate offense involving a firearm. *See* U.S.S.G. § 2K2.4(a), comment. (n. 2) & (backg'd.) (Nov.1990). We find nothing to indicate that Congress did not intend cumulative punishment to continue to apply after the Sentencing Reform Act took effect. There is, therefore, no double jeopardy.

Halford argues that the district court should have found that it had the authority to depart downward for the purpose of eliminating a sentencing disparity. He notes that two persons convicted of the same conduct—robbing a bank with a firearm—could be charged and sentenced differently: one might be charged and sentenced for violating only section 2113(a) & (d), and the other for violating both section 2113(a) & (d) and section 924(c). Halford maintains that the possibility of two defendants receiving different sentences although they had engaged in identical conduct violates the goal of avoiding "unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6) (1988).

We rejected this argument in *United States v. Foote*, 898 F.2d 659 (8th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 112, 112 L.Ed.2d 81 (1990), as did the Second Circuit in *United States v. Stanley*, 928 F.2d 575 (2d Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 141, 116 L.Ed.2d 108 (1991). We find no relevant difference between *Foote* and the present case. Accordingly, the district court did not err in imposing the consecutive sixty-month sentence mandated by section 924(c).[4]

We have considered the other contentions raised by Halford and find that they are without merit.

The judgment and sentence are affirmed.

---

**4.** We note that the United States Sentencing Commission has recently reported to Congress its findings and recommendations concerning the effect of mandatory minimum sentences on the goals of the Sentencing Reform Act. United States Sentencing Commission, Special Report to the Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System (August 1991). If disparities result from the superimposition of mandatory minimum sentences, such as those mandated by section 924, upon the guidelines promulgated by the Commission, *see id.* at iii, it is a matter for Congress to address by repealing statutory mandatory minimum sentences rather than for the courts to remedy by judicial fiat. *See Stanley,* 928 F.2d at 583.