977 F.2d 583
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Leroy CARNEY, Defendant-Appellant.
 No. 91-6085.
 United States Court of Appeals, Sixth Circuit.
 Oct. 15, 1992.
 
 Before KEITH and BATCHELDER, Circuit Judges, and HOOD, District Judge.*
 PER CURIAM:
 
 
 1
 Appellant, Leroy Carney ("Carney"), appeals the jury verdict and sentence imposed in his conviction for robbery of a federally insured bank, in violation of 18 U.S.C. 2113(d), and for using a firearm in relation to a bank robbery, in violation of 18 U.S.C. § 924(c)(1). The district court imposed consecutive sentences of fifty-one (51) and sixty (60) months for the respective convictions. For the reasons stated below, we AFFIRM the conviction and sentence.
 
 I.
 
 2
 On February 11, 1991, at approximately 2:15 p.m., a branch of the SouthTrust Bank (the "Bank") in Nashville, Tennessee was robbed. Several witnesses recounted the events of the robbery through testimony at trial. Several of these accounts follow.
 
 
 3
 Laura Fowler, working as a teller at the bank, testified that just before the robbery occurred, she observed a Black male about six feet tall and weighing about two hundred pounds enter the bank. This man pulled a mask over his face, pulled out a gun, and then announced, "This is a robbery." She testified that he then turned towards her and instructed her to place money from her teller drawer into the bag. Fowler further testified that the robber then indicated that she should hand the money bag to a fellow teller, Frances Barnett, to retrieve money from another drawer. Fowler complied, and after Barnett put money in the bag from her drawer, the robber jogged out of the bank's entrance. Fowler later identified Carney as the robber after viewing a photo array and a physical line-up.
 
 
 4
 Douglas Parker was a customer seated at the bank's secretary receptionist's desk. He testified that he looked up and observed a man enter the bank and place a mask over his face. Parker described the man as a Black male wearing a dark blue jacket, blue work-type pants, black coaching-type shoes, and a beeper. Parker further testified that he observed the black man pull a pistol from inside his jacket and proclaim, "This is a robbery; don't anybody move." Parker testified that he then observed the man proceed to two tellers indicating to each of them to place money in a sack. Parker further testified that as the robber turned to leave, he placed the pistol underneath his arm and removed the mask he was wearing. During his direct examination, Parker was asked to look around the courtroom and identify the robber for the first time since the robbery. Parker identified Carney as the man that he saw enter and rob the bank.
 
 
 5
 Frances Barnett testified that she was head teller at the bank on the day of the robbery. She indicated that when the robber entered the bank, she was typing a cashier's check for the bank's manager. Barnett indicated that she heard the robber announce the bank robbery, and she noticed that he was wearing a mask over his face. After the robber obtained money from Fowler, Barnett stated that the robber asked her for money. She concluded her recollection noting that she watched the robber begin to remove the mask as he exited the bank, and saw that he was a Black male armed with a black revolver. Finally, Barnett testified that the bank was insured by the Federal Deposit Insurance Corporation ("F.D.I.C.").
 
 
 6
 Karen White, the bank's branch manager on the date of the robbery, stated that she was facing the customer service desk when she observed the robber enter the bank. She described the robber as a black male, wearing a blue jacket, about 25 to 30 years old and weighing about two hundred fifty pounds. She stated that as she attempted to greet the man, he pulled a black mask over his face and announced the robbery. She noted that the robber held a gun in his right hand and pulled out a black nylon-type bag as he approached the tellers. She testified that she watched him proceed to two teller windows, turn to leave, and take off his mask as he ran from the bank. White further testified that three thousand five hundred and six dollars ($3506.00) was taken during the robbery, and that the bank was insured by the F.D.I.C. Subsequently, White identified Carney in a photographic array, a physical lineup and in the courtroom.
 
 
 7
 James Higgins testified that he was in the lobby of the Palmer Plaza building when he observed an individual enter the building. The bank is located off the main lobby of the Palmer building. Higgins testified that soon thereafter a bank employee, who was locking the bank doors, motioned to Higgins and asked him to pursue the individual that he had initially observed enter the building. Upon exiting the building, Higgins failed to see the individual. Higgins, however, testified that he later identified Carney in a photo spread and a physical lineup as the person whom he observed enter the Palmer Building. Higgins also identified Carney in the courtroom.
 
 
 8
 Kevin Hearn, a security guard at the Palmer Plaza building, testified that he observed a Black male, approximately six feet tall, weighing two hundred pounds, with short hair, and wearing a blue windbreaker, head for the rear exit of the Palmer Building. He further testified that, at this time, Karen White came running to the doors of the bank and asked him to stop this man just as he was about to exit the doors. In the alley beside the building, Hearn lost sight of the man because of a dumpster enclosure, but regained the trail of the robber after he spoke with two men in the alley. One of the men indicated that the black male that Hearn had been chasing entered a pickup truck. Upon reaching the lot where he had been told the pickup was parked, Hearn testified that he caught a glimpse of what he perceived as a black pickup truck with the words "Heating and Cooling" printed on the rear of the truck in white letters with the word "Mazda".
 
 
 9
 Teddy Shepherd was employed by a company housed within the Palmer Plaza Building. Shepherd also testified that he observed a Black male, about five feet-six inches tall, weighing about 180-200 pounds exit the Plaza Building and run down the alley alongside the building. Shepherd testified that he observed this man get into a late model black Mazda pickup truck with a camper on the back. The truck had the words "Heating and Cooling" and "Air Conditioning" printed on it. At trial, he identified photos of the truck in which he saw the robber drive away. Shepherd also identified Carney in a physical line-up and in the courtroom as the man who entered the truck.
 
 
 10
 Officer Charles G. Mallory investigated the February 11, 1991, robbery at the bank and determined that Carney was the operator of a business named C.M.S. Heating and Cooling. Mallory also determined that Carney drove a black Mazda truck similar to the one used by the robber.
 
 
 11
 On February 16, 1991, a Federal Bureau of Investigation's agent arrested Carney for the robbery of the bank which occurred on February 11, 1991. Subsequent to the defendant's arrest, a consent search took place at his apartment. As a result of the search, officers seized a pair of black tennis shoes, one pair of blue khaki work pants and one digital beeper.
 
 
 12
 Carney was convicted at the close of a five day jury trial, when the jury returned a verdict of guilty as to both counts of the indictment. The court imposed a combined sentence of 111 months on both counts followed by five years of supervised release. The court also ordered Carney to pay restitution in the amount of three thousand five hundred and six dollars ($3506.00). Defense counsel made several post-trial motions, all of which were denied. This timely appeal followed.
 
 II.
 
 13
 Carney brings four assignments of error on this appeal. He first claims that the district court improperly denied his motion for judgment of acquittal. Carney then contends that his conviction on both counts of the indictment violates the Fifth Amendment prohibition against double jeopardy. He then argues that the district court improperly denied his motion for a new trial. Finally, in a pro se brief, Carney attempts to bring a claim of ineffective assistance of counsel. Each claim is addressed seriatim below.
 
 A.
 
 14
 At the close of the government's proof, Carney moved for judgment of acquittal, alleging that the government had failed to prove its case beyond a reasonable doubt. Carney essentially challenges the sufficiency of the evidence upon which the conviction was based. The district court denied this motion both during the trial and upon the renewed motion following the jury's guilty verdict. On appeal, Carney contends that the district court committed reversible error because the prosecution failed to prove every essential element of the crime charged. Specifically, Carney argues that the prosecution failed to prove that the bank was insured by the F.D.I.C. and failed to disprove Carney's alibi defenses beyond a reasonable doubt.
 
 
 15
 We review a claim of insufficiency of the evidence to determine "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). Because an appellate court does not sit as a trier of fact, the court must resolve all conflicts in the testimony and draw every reasonable inference from the evidence in the government's favor. United States v. Tilton, 714 F.2d 642, 645 (6th Cir.1983). If review of the evidence in this light establishes that there was sufficient evidence to support a guilty jury verdict, the conviction must be affirmed. Id. at 645-46.
 
 
 16
 The record below amply supports the conviction of Carney. First, an essential element of the offense requires that the bank that was robbed be insured by the F.D.I.C. Two witnesses, the branch manager and the head teller, testified to the insured status of the bank without objection by the defense. Second, the government is not charged with disproving a defendant's alibi. As required by United States v. Burse, 531 F.2d 1151, 1152-53 (2d Cir.1976), the district court sufficiently instructed the jury with regard to Carney's alibi. Moreover, the district court properly noted in its jury charge that it was the government's burden to prove the existence of each essential element of the crime charged beyond a reasonable doubt. Accordingly, the motion for judgment of acquittal was properly denied.
 
 B.
 
 17
 Carney next contends that his convictions and sentences, imposed as a result of having been found guilty of violating both 18 U.S.C. § 2113(d) and 18 U.S.C. § 924(c), violate the Fifth Amendment's prohibition against double jeopardy. Carney objects to the fact that the two convictions and their respective sentences were based on the same operative facts and evidence. Carney argues that the conviction under Section 2113(d) (armed bank robbery) and Section 924(c) (use of a firearm during and in relation to a crime of violence) arise out of the same criminal act, and, therefore, the sentences imposed must constitute a violation of the Double Jeopardy Clause.
 
 
 18
 In Missouri v. Hunter, 459 U.S. 359 (1983), the Supreme Court addressed the issue of cumulative sentences imposed in a single trial stating that the Double Jeopardy Clause "does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." Id. at 366. Moreover, the legislative history of 18 U.S.C. § 924(c) states that its enhancement provisions are applicable to "crimes set forth in statutes which already provide for enhanced sentences for their commission with a dangerous weapon...." H.R.Rep. No. 1030, 98th Cong., 2d Sess. (1984) reprinted in 1984 U.S.C.C.A.N. 3182, 3491. The legislative history specifically notes that Section 924(c) is applicable to the crimes set forth in 18 U.S.C. § 2113. Id. at 3491 n. 8.
 
 
 19
 The Fifth Circuit addressed this particular question in United States v. Holloway, 905 F.2d 893 (5th Cir.1990). In Holloway, our sister Circuit held that the defendant's convictions for violating 18 U.S.C. § 2113(d) and 18 U.S.C. § 924(c) and the resulting imposition of consecutive sentences was in full accord with Missouri v. Hunter, 459 U.S. 359 (1983). See also United States v. Harris, 832 F.2d 88 (7th Cir.1987); United States v. Shavers, 820 F.2d 1375 (4th Cir.1987); United States v. Doffin, 791 F.2d 118 (8th Cir.1986), cert. denied, 479 U.S. 861 (1986). Moreover, in United States v. Moore, 917 F.2d 215 (6th Cir.1990), cert. denied 111 S.Ct. 1590 (1991), this Court held that the imposition of consecutive sentence for convictions under Section 2114 (armed robbery of a post office) and Section 924(c) does not constitute double jeopardy. Moore, 917 F.2d at 229.
 
 
 20
 Carney argues that this case is distinguishable from Moore. Carney suggests that the gravamen of this Court's ruling was based on the legislative intent of Congress as opposed to any potential constitutional violations. Carney attempts to buttress his argument by citing Simpson v. United States, 435 U.S. 6 (1978) and Busic v. United States, 446 U.S. 398 (1980).
 
 
 21
 As the Supreme Court noted in Hunter, however, congressional intent on the issue is dispositive, and double jeopardy only becomes an issue if the sentence imposed is greater than that intended by Congress. See Hunter, 459 U.S. at 366. In Holloway, the Fifth Circuit succinctly stated the law as it presently stands:
 
 
 22
 Where Congress authorizes cumulative punishments for even the same offense, the Double Jeopardy Clause of the Fifth Amendment is not offended. Missouri v. Hunter, 459 U.S. 359, 367, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983). Section 924(c) was amended by the Comprehensive Crime Control Act of 1984 to include a mandatory penalty for the use of a firearm during a federal crime of violence and to statutorily overrule Simpson and Busic. Its legislative history clearly shows that Congress intended to completely revise § 924(c) so that it would serve as a cumulative punishment in addition to that provided for the underlying violent crime. Pub.L. No. 98-473 § 1005, 98 Stat 1837, 2138.
 
 
 23
 Holloway, 905 F.2d at 894. The Fifth Circuit offers the most compelling analysis of Congress' intent for Section 924(c). Accordingly, Carney's double jeopardy challenge to the imposed sentences must fail.
 
 C.
 
 24
 Carney also contends that the district court improperly denied his motion for a new trial. He claims that a new trial should be granted because the government withheld certain unspecified exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83, 87 (1963). Arguably, Carney waived this claim in the district court by failing to raise it in a clear and unambiguous manner. See Taft Broadcasting Co. v. United States, 929 F.2d 240, 243-44 (6th Cir.1991).
 
 
 25
 Assuming that the claim was properly raised in the district court, however, we review the district court's denial of Carney's motion for a new trial for an abuse of discretion. United States v. Chambers, 944 F.2d 1253, 1264 (6th Cir.1991), cert. denied, 112 S.Ct. 1217 and cert. denied, Lucas v. United States, 112 S.Ct. 1680 (1992). Moreover, this Court has held that "[t]he prosecutor will not have violated his constitutional duty of disclosure unless his omission is of sufficient significance to result in the denial of the defendant's right to a fair trial." United States v. Minsky, 963 F.2d 870, 875 (6th Cir.1992) (quoting United States v. Presser, 844 F.2d 1275, 1281 (6th Cir.1988)). The government's omission of such evidence is prejudicial if there is a reasonable probability that the disclosure would have changed the outcome. See Minsky, 963 F.2d at 875.
 
 
 26
 On appeal, Carney simply has failed to identify any specific exculpatory evidence which would have substantially altered the outcome. Accordingly, the district court did not abuse its discretion by denying Carney's motion for a new trial.
 
 D.
 
 27
 Carney brings one additional claim in a pro se appellant brief which he filed separately. Carney contends that he was denied effective assistance of counsel. He cites many actions of counsel, or lack thereof, as evidence of his claimed constitutional violation. Carney broached the subject of ineffective assistance of counsel at the sentencing hearing but did not seek a formal ruling from the district court. Because Carney seeks a ruling on this claim for the first time on appeal and, thus, an adequate record has not been established to assess its merits, the claim is not properly before the court and should not be considered. United States v. Daniels, 956 F.2d 540, 543 (1992). Although this claim of ineffective assistance of counsel is not properly before the court, this defendant is not precluded from bringing this claim in a post conviction proceeding pursuant to 28 U.S.C. § 2255, where an adequate record can be developed. See United States v. Frazier, 930 F.2d 262, 267 (6th Cir.1991); United States v. Wunder, 919 F.2d 34, 37 (6th Cir.1990) (this Court indicating that it would not consider a claim of ineffective assistance of counsel when the record is not adequate to assess the claim's validity).
 
 III.
 
 28
 For the foregoing reasons, the conviction and sentence entered by the Honorable Thomas J. Higgins, United States District Judge for the Middle District of Tennessee is AFFIRMED.
 
 
 
 *
 The Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation