STATE of Missouri,
Plaintiff-Respondent,

v.

Robert Earl HENDERSON,
Defendant-Appellant.

No. 49322.

Missouri Court of Appeals,
Eastern District,
Division One.

Sept. 3, 1985.

Motion for Rehearing and/or Transfer
Denied Oct. 3, 1985.

Robert J. Maurer, Asst. Public Defender, Clayton, for defendant-appellant.

Carrie Francke, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

KAROHL, Judge.

Defendant was found guilty by a jury of first degree assault Class A, § 565.050 RSMo 1978, and armed criminal action, Class A, § 571.015 RSMo 1978. He was sentenced to consecutive prison terms of twenty (20) and fifteen (15) years respectively. Defendant contends on appeal the trial court erred in (1) overruling a motion to suppress evidence; (2) refusing to grant a motion for acquittal; and (3) convicting

him of both assault in the first degree, Class A, and armed criminal action. We affirm.

On the evening of October 26, 1983, Melinda and Kenneth Wright held a party at their home in Berkeley, Missouri. Defendant, an uninvited guest, arrived at the party about 10:45 p.m. The Wrights, acquainted with defendant from high school, permitted him to stay at the party. Defendant, an army veteran, became embroiled into a heated discussion with Kenneth Wright about United States foreign policy. During the argument the men proceeded from the house to the Wright's front yard when the defendant was told to leave and he responded, "I'll shoot the big pistol." Kenneth Wright replied, "Not up here you won't." As defendant left the scene Kenneth Wright threw a 10–12 inch "boulder" at defendant's grey 1976 Cadillac.

The following Sunday, October 30, 1983, Melinda Wright's brother, Montez Burks, was sitting in a parked car outside a drug store in Berkeley, Missouri. There, the defendant approached Montez and stated, "Tell Kenneth Wright that he done three hundred dollars worth of damage to my car and I don't want no money for it."

On October 31, 1983, Melinda Wright was feeding her two children in their kitchen about 10:00 p.m. when six shots penetrated the kitchen window. One of the shots struck Melinda's three (3) year old daughter, Tiffany. Melinda found her daughter lying on the floor bleeding profusely from a head wound. The police discovered six spent .22 caliber cartridge shells directly outside the kitchen window.[1]

Berkeley police staked-out defendant's residence waiting for him to operate his vehicle. They intended to stop the defendant and "hoped to find the weapon" used in the shooting of Tiffany Wright. While op-

---

1. Police discovered eleven spent .22 caliber cartridge shells on the grounds of the Wright's home at 6152 Shillington, Berkeley. The shells were marked as prosecution's evidence Exhibits 21(a), (b) and (c). The location of the shells were measured from the northeast foundation

corner. Exhibit 21(a) two cartridges were discovered 12'7" north, 10'9" east; Exhibit 21(b) three cartridges were discovered 21'7" north, 6'0" east and Exhibit 21(c) six cartridges were discovered 14'6" east, 3'6" south (outside the kitchen window).

erating his vehicle defendant was arrested by the police officers. Defendant was given *Miranda* warnings and consented to the search of his vehicle. Police discovered two spent .22 caliber cartridge shells in the trunk of his car. The cartridge shells, labeled Exhibit 21(d), were sent to ballistic experts who determined the shells were "fired from the same weapon" as the six spent shells discovered outside the Wright's kitchen window. Additionally, on three occasions defendant admitted his involvement in the shooting to a female acquaintance.

■ First, defendant claims the trial court erred in overruling a pre-trial motion to suppress as evidence the two spent shells found in the trunk of his car as a violation of due process and equal protection. The motion was denied. During the direct examination of the ballistic expert, the state introduced the shells in Exhibits 21(a), (b), (c) and (d) over defendant's objection. Unlike defendant's pre-trial motion to suppress on constitutional grounds, his objection at trial was based on chain of custody grounds. Where "a motion to suppress evidence is denied and the evidence [is] subsequently offered at the trial, defendant must then object to the admission of the evidence with a proper statement of reasons for the objection ... in order to preserve it for appellate review." *State v. Howard*, 564 S.W.2d 71, 74 (Mo.App.1978). Defendant can not predicate trial error on a ground not raised at trial. *Walker v. Woolbright Motors, Inc.*, 591 S.W.2d 289, 291 (Mo.App.1979). The claim of error on constitutional grounds is not preserved.

The defendant's second contention of error relates to the refusal of the trial court to grant a motion for acquittal at the close of all the evidence because the evidence was insufficient to support a conviction. The state's case was based on direct and circumstantial evidence. In our review of the record we accept as true all evidence tending to prove appellant guilty together with all reasonable inferences supportive of the verdict. *State v. Brooks*, 618 S.W.2d 22, 23 (Mo. banc 1981).

In *State v. Davis*, 677 S.W.2d 370, 371 (Mo.App.1984) this court observed:

In a case based on circumstantial evidence, the facts and circumstances must be consistent with each other and with the hypothesis of defendant's guilt and inconsistent with his innocence. *State v. Porter*, 640 S.W.2d 125, 127 (Mo. banc 1982). However, the circumstantial evidence need not be absolutely conclusive of guilt or demonstrate the impossibility of innocence. *State v. Morgan*, 592 S.W.2d 796, 805 (Mo. banc 1980). Our function is not to weigh the evidence but to determine whether there was sufficient evidence from which reasonable persons could find defendant guilty as charged. *State v. Kelly*, 539 S.W.2d 106, 109 (Mo. banc 1976).

■ There were many witnesses to the argument between defendant and Kenneth Wright on October 26, 1983, as well as to defendant's threatening statements made to the Wrights on October 30, 1983. On three separate occasions defendant confessed to an acquaintance who testified at trial that defendant told her he was sorry for shooting Tiffany. This oral testimony was supported by the ballistic report which confirmed that the shells found outside the Wright's home were discharged from the same weapon as the shells found in defendant's car. We find there was sufficient evidence from which reasonable persons could find the defendant guilty as charged.

Defendant's third contention is the court erred by convicting him of both assault in the first degree, Class A, and armed criminal action. Defendant claims the essential element to prove the crime armed criminal action, use of a weapon, is the same element which is essential to prove the underlying felony first degree assault, Class A. He claims this is a violation of the Double Jeopardy Clause of the Fifth Amendment.

The pertinent statutes are as follows: Assault in the first degree § 565.050 RSMo 1978:

1. A person commits the crime of assault in the first degree if:

(1) He knowingly causes serious physical injury to another person; or

(2) He attempts to kill or to cause serious physical injury to another person; or

(3) Under circumstances manifesting extreme indifference to the value of human life *he recklessly engages in conduct which creates a grave risk of death to another person and thereby causes serious physical injury to another person.*

2. Assault in the first degree is a class B felony unless committed by *means of a deadly weapon or dangerous instrument in which case it is a class A felony.* (emphasis ours)

Armed criminal action: § 571.015 RSMo 1978:

1. Except as provided in subsection 4 of this section, *any person who commits any felony under the laws of this state by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon is also guilty of the crime of armed criminal action* and, upon conviction, shall be punished by imprisonment by the division of corrections for a term of not less than three years. *The punishment imposed pursuant to this subsection shall be in addition to any punishment provided by law for the crime committed by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon.* No person convicted under this subsection shall be eligible for parole, probation, conditional release or suspended imposition or execution of sentence for a period of three calendar years.

. . . . .

4. The provisions of this section shall not apply to the felonies defined in sections 564.590, 564.610, 564.620, 564.630, and 564.640, RSMo. (emphasis ours)

The United States Supreme Court in *Missouri v. Hunter,* 459 U.S. 359, 103 S.Ct. 673, 679, 74 L.Ed.2d 535 (1983) stated:

Where, as here, a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the same conduct under *Blockburger* [*Blockburger v. United States,* 284 U.S. 299 [52 S.Ct. 180, 76 L.Ed. 306] (1932)], a court's task of statutory construction is at an end and the prosecutor may seek and the trial court impose cumulative punishment under such statute in a single trial.

Accordingly, § 571.017 RSMo Cum.Supp. 1982 proscribes:

Nothing contained in any other provision of law, except as provided in subsection 4 of section 571.015, shall prevent imposition of sentences for both armed criminal action and the crime committed by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon.

The *[Blockburger]* doctrine only prevents the sentencing court from prescribing greater punishment than the legislature intended. *State v. Cornman,* 695 S.W.2d 443 (Mo. banc 1985). In a multiple count case where there is clear legislative intent as to punishment and the counts are presented in a *single trial* the *Blockburger* rule simply has no application. *Id.* (emphasis theirs)

■ We are bound by *Hunter* and *Cornman* to use the *Blockburger* test only to determine the legislature's intent. In the present case the Missouri legislature's intent is well defined in that armed criminal action and the underlying felony with a deadly weapon are now considered only as a matter of intended and extended punishment and not as a violation of the constitutional limits of the Fifth Amendment against "two crimes." *See* Thomas, *Multiple Punishments for the Same Offense: The Analysis after Missouri v. Hunter* ..., 62 Wash.U.L.Q. 79 (1983).

We therefore must find no violation of the Double Jeopardy Clause of the Fifth Amendment.

Affirmed.

PUDLOWSKI, P.J., and CARL R. GAERTNER, J., concur.