Sammie CLEMONS, Movant–Appellant,

v.

STATE of Missouri, Respondent.

No. 15497.

Missouri Court of Appeals, Southern District, Division One.

July 29, 1988.

Motion for Rehearing or to Transfer to Supreme Court Denied Aug. 9, 1988.

Application to Transfer Denied Sept. 13, 1988.

David E. Woods, Public Defender, Poplar Bluff, for movant-appellant.

William L. Webster, Atty. Gen., William J. Swift, Asst. Atty. Gen., Jefferson City, for respondent.

GREENE, Judge.

Sammie Clemons appeals from the denial without evidentiary hearing of his motion to vacate convictions and ensuing sentences imposed after his pleas of guilty to charges of attempted first degree robbery, § 564.011,[1] and armed criminal action § 571.015, and what is known as an Alford plea[2] to a charge of first degree assault, § 565.050. Sentences imposed were life imprisonment for the assault and armed criminal action charges and 15 years for the attempted armed robbery with the sentences to run concurrently.

The substance of the state's evidence giving rise to the filing of the criminal charges against Clemons was that on December 8, 1983, Clemons entered Voelker's Jewelry Store in Sikeston, Missouri, and, during an aborted holdup attempt, pointed a .38 caliber revolver at Geneva Voelker when she tried to telephone police, and pulled the trigger. The gun misfired. During Clemons' attempt to flee, he was shot by Geneva's husband, Joe Voelker. He was later apprehended by the police.

On March 4, 1987, after Clemons was confined to serve his sentences, he filed a motion requesting post-conviction relief pursuant to Rule 27.26,[3] which, after amendment by court-appointed counsel, alleged ineffective assistance of trial counsel for failure to raise the double jeopardy issue concerning Clemons' pleas to the assault and attempted robbery charges, and his failure "to correct the trial court" when the court advised Clemons, before he entered his pleas, that he could receive sentences totaling 250 years if he stood trial and was convicted of the three crimes with which he was charged.

1. Unless otherwise indicated, all references to statutes are to RSMo 1979, V.A.M.S., and all references to rules are to Missouri Rules of Court, V.A.M.R.

2. An Alford plea of guilty does not contain an admission of the commission of a crime, but is a plea of guilty based on the defendant's belief that he would receive a greater sentence if he stood trial than that offered in a plea bargain agreement. Such pleas are accepted by trial courts if there is a strong factual basis for the plea. *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

3. Rule 27.26 was repealed effective January 1, 1988. Page 142, Missouri Rules of Court (19th ed. 1988). The instant proceeding continues to be governed by Rule 27.26, as the sentences were pronounced prior to January 1, 1988, and movant's motion under Rule 27.26 was pending prior to January 1, 1988. Rule 24.035(*l*), Missouri Rules of Criminal Procedure (19th ed. 1988).

The hearing court denied the motion to vacate, which was supported by written findings of fact and conclusions of law. Our review is limited to a determination of whether the judgment, findings, and conclusions were clearly erroneous. Rule 27.-26(j).

█ On appeal, Clemons raises the same two issues alleged in his motion to vacate, which were the double jeopardy claim, and the threat of excessive punishment if he stood trial. In regard to the double jeopardy claim, Clemons contends that his trial counsel was ineffective when he "allowed" him to plead guilty to all three charges, as the assault and attempted robbery charges were premised on the same act, which was the assault on Mrs. Voelker with a pistol, and, therefore, convictions on both charges constitutes double jeopardy, which is barred by the fifth amendment to the U.S. Constitution. In support of his position, Clemons cites *State v. Richardson,* 460 S.W.2d 537 (Mo. banc 1970), and *State v. Neal,* 514 S.W.2d 544 (Mo. banc 1974).

In *Richardson,* the defendant entered a guilty plea to a charge of attempted robbery, the substance of which charged that " 'while armed with a deadly weapon, to wit, a butcher knife with a sharp and pointed blade [he] attempted to hold up and rob Emmett M. Wilkes at Ed's Liquor Store in the City of Mexico.' " Richardson was also charged with an assault on Wilkes, with the information charging that " 'at Ed's Liquor Store in the City of Mexico, [defendant] did willfully, feloniously, on purpose, and of his malice aforethought, * * * make an assault upon Emmett M. Wilkes with a deadly weapon, to wit a certain butcher knife with a sharp and pointed blade, a means likely to produce death or great bodily harm, with intent to kill or maim Emmett M. Wilkes.' " *Richardson,* supra, 460 S.W.2d 537–38. In setting aside the conviction on the assault charge, the Supreme Court held that since the assault on Wilkes was the "necessary" act to justify conviction on the attempted robbery charge, that act could not be used as the basis of the assault charge as such submission would permit multiple punishments for the same act. Id. 540.

In *Neal,* the defendant was charged in a three-count information with one count of robbery and two counts of assault. The robbery count charged that Neal and Earl Fingers "feloniously and by means of a pistol, did rob and take $282, the property of William Cordes, d/b/a Cordes Hardware, in the care and custody of Johnnie Walton, by putting Johnnie Walton in fear of immediate injury to his person...." Count II alleged that Neal and Fingers assaulted William Cordes with a pistol, with the intent to kill him. Count III was the same as Count II except that the assault alleged was upon Johnnie Walton. The Supreme Court, citing *Richardson,* reversed Neal's conviction on the assault charge involving Walton, saying the assault with the pistol was the same act as that charged in the robbery Count. *State v. Neal,* supra, at 548.

Here, the attempted robbery charge stated that Clemons "attempted to forcibly steal jewelry and lawful currency of the United States owned by Joe Voelker and Geneva Voelker, doing business as Voelker's Jewelers, and in the course thereof defendant was armed with a deadly weapon, and such conduct was a substantial step toward the commission of the crime of robbery in the first degree of Voelker's Jewelers, and was done for the purpose of committing such robbery." The "conduct" referred to was Clemons being armed with a deadly weapon, which the record indicates was a .38 caliber revolver. The assault charge states that Clemons "attempted to kill or to cause serious physical injury to Geneva Voelker by putting a .38 caliber revolver to her head and pulling the trigger, and defendant committed this offense by means of a deadly weapon."

The motion court found no merit in the double jeopardy argument, stating that the charges of assault, attempted robbery, and armed criminal action were separate offenses, citing *Missouri v. Hunter,* 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983), and *State v. Henderson,* 698 S.W.2d 596 (Mo.App.1985). These citations are inap-

propriate under the facts of this case, but do not affect the legal conclusions reached.

*Hunter* was a case where a first degree robbery charge was coupled with a charge of armed criminal action. In *Henderson*, an assault charge was coupled with a charge of armed criminal action. In both cases, the essential element used to prove the armed criminal action charge (use of a weapon) was the same element essential to be proven in the underlying felony charge. In affirming convictions on the robbery and armed criminal action counts of the indictment, the Supreme Court of the United States in *Hunter* held:

> Where, as here, a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the "same" conduct under *Blockburger* [*Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932)], a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial.

*Missouri v. Hunter*, supra, 103 S.Ct. at 67ɔ.

Section 571.017 RSMo Cum.Supp.1988 proscribes:

> Nothing contained in any other provision of law, except as provided in subsection 4 of section 571.015, shall prevent imposition of sentences for both armed criminal action and the crime committed by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon.

*State v. Cornman*, 695 S.W.2d 443, 449 (Mo. banc 1985), held that:

> [T]he [*Blockburger*] doctrine only prevents the sentencing court from prescribing greater punishment than the legislature intended. Where in a multiple count case there is clear legislative intent as to punishment and the counts are presented in a *single trial* the *Blockburger* rule simply has no application.

In *State v. Henderson*, supra, dual convictions of assault and armed criminal action were affirmed. The appellate court, citing *Hunter* and *Cornman*, stated that the Missouri legislature's intent was well defined through its enactment of § 571.015 RSMo 1978, and § 571.017, RSMo Cum. Supp.1982, "that armed criminal action and the underlying felony with a deadly weapon are now considered only as a matter of intended and extended punishment and not as a violation of the constitutional limits of the Fifth Amendment against 'two crimes.'"

While we have no quarrel with the doctrine of those cases, their holdings have no application here. In the first place, Clemons has not attacked his armed criminal action conviction. Additionally, the facts do not indicate that the assault on Mrs. Voelker was the essential element needed to prove the attempted robbery charge. Section 569.020.1 defines robbery in the first degree as follows:

> 1. A person commits the crime of robbery in the first degree when he forcibly steals property and in the course thereof he, or another participant in the crime,
>
> (1) Causes serious physical injury to any person; or
>
> (2) Is armed with a deadly weapon; or
>
> (3) Uses or threatens the immediate use of a dangerous instrument against any person; or
>
> (4) Displays or threatens the use of what appears to be a deadly weapon or dangerous instrument.

Section 564.011.1 defines the crime of attempt as follows:

> 1. A person is guilty of attempt to commit an offense when, with the purpose of committing the offense, he does any act which is a substantial step towards the commission of the offense. A '**substantial step**' is conduct which is strongly corroborative of the firmness of the actor's purpose to complete the commission of the offense.

The "substantial step" alleged in the attempt charge here was that Clemons was armed with a deadly weapon, not that he had assaulted Geneva Voelker. Possession of the pistol with the intent to use it in robbing Mr. and Mrs. Voelker is an entirely

different element than attempting to shoot Mrs. Voelker.

The facts in this case are similar to those shown in *State v. Sprous,* 639 S.W.2d 576 (Mo.1982). In that case, Sprous and his companion, Kenny Heistand, entered a drug store and announced a holdup. Sprous was armed with a rifle. The two men told Charles Cantwell, the managing pharmacist, and his employees to get on the floor, and that they would be killed if they tried to call police. Sprous and Heistand demanded drugs, and when Cantwell was slow to comply, Sprous shot him. Sprous was charged with, and convicted of, first degree robbery and first degree assault. In disposing of a double jeopardy claim, the Supreme Court held:

> The robbery charge required proof that defendant stole property while armed with a deadly weapon. The assault charge required proof that defendant knowingly caused serious physical injury to Cantwell by shooting him, and not simply that defendant employed physical force. Each offense requires proof of a fact the other does not, and conviction of both does not violate double jeopardy proscription. *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *see State v. McCrary,* 621 S.W.2d 266 (Mo. banc 1981). Moreover, the act of force constituting the assault was not that which served as an element of the robbery charge. *See Thompson v. State,* 606 S.W.2d 263 (Mo. App.1980). The contention is quite without merit.

Id. at 578.

Such is the case here. The act of force constituting the assault upon Mrs. Voelker was not the act upon which the attempted robbery charge was based. The motion court reached the right conclusion, even if based on the wrong reasoning. Its conclusion that the attempted robbery charge and the assault charge were separate crimes was not clearly erroneous.

■ Clemons' remaining point is that his trial counsel was ineffective by failing "to correct the trial court" concerning the maximum punishment Clemons could receive in the event he chose to stand trial. Clemons asserts that the trial court's statement that he could receive a 250–year sentence coerced him into entering the pleas in question.

The statutory range of punishment on the assault charge was imprisonment in the penitentiary for not less than 10 years nor more than 30 years, or for life, § 558.011.1(1), imprisonment in the penitentiary for not less than three years on the armed criminal action charge, § 571.015.1, and imprisonment in the penitentiary for not less than five years nor more than fifteen years on the attempted robbery charge, § 558.011.

A transcript was made of the guilty plea and Alford plea proceedings. During the discussion of the Alford plea, the following conversation took place between Clemons and the trial judge:

Q. (By the Court) Have they explained an Alford plea? That's where you say, look, I understand. I didn't do it in my mind, but if I try it, they are going to bust me. Do you understand that?

A. Yes, sir.

Q. Do you believe that? A. Yes, sir.

Q. Based on that I am going to accept an Alford plea on Count I.

MR. ROBBINS: Judge, in that we have discussed it and Sammie knows, we have talked about it, he has told me he has no witnesses. Even though we have talked about it several times, we have subpoenas. He would take the stand and testify, but he feels that the evidence the prosecutor would introduce would be over-whelming, to have the local jeweler and his wife testifying as to what they say, and Sammie testifying as to what he says, and frankly he's fearful he would get more time than the time you might impose.

Q. Is that correct, Mr. Clemmons?

A. Yes, sir.

Q. He's explained to you the Alford plea. Do you have any questions?

A. Yes, sir, I want to ask you a question.

Q. All right.

A. Do you believe that if you take a gun—if I took a gun and put it to this woman, that I would be here? And also do you believe that if I got a gun against your wife's head that you are going to shoot me? I am standing there with a gun at your wife's head pulling the trigger and you shot at me and hit me in the hand the guns in and it's supposed to be up against the woman's head? That's impossible.

Q. I don't know, and going this way I don't have to make that decision. I have already told them I would accept an Alford plea on it, so we don't get to that question, as long as you are satisfied that this is the best way for you to go.

See, it's your rights right now that I am thinking about. Like your attorney said, you could go and get all these things consecutively—250 years. Do you understand that?

A. Yes, sir.

Q. So long as you think it's the best deal for you to make the Alford plea, then I can accept an Alford plea. Do you understand that?

A. Yes, sir.

Where the trial court got the figure 250 years is anybody's guess, as no such punishment, concurrent or consecutive, is shown by the applicable statutes. In disposing of Clemons' contention on this issue, the motion court found and concluded:

GROUND B: Movant alleges that he did not understand the consequences of his being found guilty as he was charged and was coerced into pleading guilty by the sentencing judge treatening [sic] him with 250 consecutive years if he did not plead guilty.

On page 3 of the transcript of the guilty plea the range of punishment for the charges Movant was found guilty of were told to him by Judge Heckemeyer. Furthermore Movant signed a Petition to Enter Plea of Guilty which included in Paragraph 11 thereof the range of punishment for all three offenses. Movant is concerned with the effect of Judge Heckemeyers's words at Page 14 of the transcript of the guilty plea wherein he said 'you could go and get all these things consecutively—250 years.' This statement was made in the context of the Alford Plea as to the charge of Assault in the First Degree. A reading of this statement *in context* makes it clear that Judge Heckemeyer was explaining the *possible* consequences if a jury trial were held on all three offenses and the Movant had been found guilty. Specifically, he was making the point that all the sentences could possibly run consecutively. Judge Heckemeyer was being casual in using the words '250 years' as no such consecutive sentence could be imposed; however, the import of what he meant was very clear and proper. As a matter a [sic] record the Movant received *concurrent* sentences on all three offenses and *knew* that was to be the recommendation of the Prosecuting Attorney.

The whole transcript of the guilty plea taken with the Petition to Enter Plea of Guilty shows that the Movant was well aware of all the possible consequences of the pending charges against him and entered his Alford plea and guilty pleas with full understanding and knowledge and without coersion [sic] from anyone.

These findings and conclusions are not clearly erroneous. Since the guilty plea transcript conclusively establishes that Clemons had been advised as to the actual range of punishment for the three crimes, and that he had indicated that he understood such explanation, the trial court's "casual" remark concerning a possible 250-year sentence, which statement was incorrect, was mere hyperbole used to illustrate that Clemons was risking a stiffer sentence than that proposed in the plea bargain agreement if he stood trial. Under the circumstances, Clemons' trial lawyer was not ineffective for failure to correct the trial court.

The order of the motion court denying relief on Clemons' motion to vacate is affirmed.

HOLSTEIN, C.J., and CROW, P.J., concur.