**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Jerry Charles HALL, Defendant–Appellant.**

No. 92–6168.

United States Court of Appeals, Tenth Circuit.

Jan. 26, 1993.

Joe L. Heaton, U.S. Atty. (Timothy D. Leonard, U.S. Atty. and M. Jay Farber, Asst. U.S. Atty., on the brief), Oklahoma City, OK, for plaintiff-appellee.

Susan M. Otto, Asst. Federal Public Defender (William P. Early, Asst. Federal Public Defender, on the brief), Oklahoma City, OK, for defendant-appellant.

Before SEYMOUR, MOORE, Circuit Judges, and THEIS, District Judge.[*]

THEIS, District Judge.

The defendant appeals from the order of the United States District Court for the Western District of Oklahoma, the Honorable Robin J. Cauthron presiding, revoking supervised release and sentencing defendant to 21 months imprisonment. We affirm.

Defendant raises two issues in this appeal: (1) whether self-incriminating information provided pursuant to an agreement to cooperate with state authorities may be used in a subsequent proceeding to revoke supervised release; and (2) whether the evidence was sufficient to sustain the court's finding that the defendant committed a Grade A violation of his supervised release.

In August 1988, the defendant pleaded guilty in the United States District Court for the Western District of Missouri to a one count information charging conspiracy to distribute cocaine. R. Vol. III, at 1. The defendant was sentenced to a term of imprisonment to be followed by a five year term of supervised release. Following the completion of his term of incarceration, the defendant began serving his term of supervised release. Subsequently, on December 12, 1990, a transfer of jurisdiction order was entered, transferring jurisdiction of this case to the Western District of Oklahoma. R.Vol. I (docket sheet).

On April 7, 1992, a petition to revoke supervised release was filed. The defendant's probation officer alleged that the defendant had violated the conditions of his supervised release by involving himself in the distribution of cocaine, involving himself with persons involved in criminal activity, failing to report an arrest by the Oklahoma City, Oklahoma Police Department, and acting as an informant for the Oklahoma City Police Department without permission of court. R.Vol. I, Tab 4–7–92. On April 17, 1992, following an evidentiary hearing on the petition, the district court found that the defendant violated the terms of his supervised release. R.Vol. I, Tab 4–17–92. On April 20, 1992, the court sentenced the defendant to serve a term of imprisonment of 21 months. R.Vol. I, Tab 4–24–92.

Lieutenant Byron Boshell of the Oklahoma City Police Department testified at the revocation hearing that he first came in contact with the defendant on November 3, 1991. R.Vol. II, at 5–6. An individual whom Boshell had recently arrested agreed to serve as an informant for the police. The informant set up a one ounce cocaine purchase and informed the police that the person delivering the drugs would be driving a small light brown car. Police officers observed a small light brown car arrive at the designated location and approach the informant. A police officer then pulled in behind the light brown vehicle and turned on his overhead lights. The driver left the parking lot in his vehicle and led the police on a chase lasting approximately five miles and reaching speeds of up to 104 miles per hour. The chase ended when the driver wrecked his vehicle and escaped into a wooded area. A police helicopter equipped with a heat detecting device was used to locate the defendant hiding in some bushes. R.Vol. II, at 7–10. The defendant was then arrested by the Oklahoma City Police for attempting to deliver cocaine.

The defendant subsequently told the police that he threw the ounce of cocaine out of the car during the chase which preceded his arrest. After the defendant wrecked his vehicle, the police discovered that the driver's window of the car was down, although it was cold that night. R.Vol. II, at 12. No cocaine was ever recovered. R.Vol. II, at 14.

One or two days after his arrest, the defendant agreed to cooperate with the Oklahoma City Police. The defendant arranged an undercover transaction involving a kilogram of cocaine. R.Vol. II, at 11–12. In exchange, the defendant was promised

[*] The Honorable Frank G. Theis, District Judge, United States District Court for the District of Kansas, sitting by designation.

that he would not be prosecuted on the drug charge. In accordance with the agreement, defendant was released and no state charges were filed. R.Vol. II, at 19–20. The United States government was not involved in the cooperation agreement the defendant reached with the state authorities. R.Vol. II, at 20.

United States Probation Officer Derald T. Riggs also testified at the hearing. Riggs had been supervising the defendant since the defendant moved to Oklahoma City in October 1990. R.Vol. II, at 22–23. While conducting a routine records check during a 6 month case review, Riggs discovered the November 3, 1991 arrest by the Oklahoma City Police. Riggs testified that, although he and the defendant had had several meetings between November 1991 and April 1992, the defendant never reported the arrest. A day or two after he conducted the routine records check, Riggs also discovered that the defendant had acted as a police informant without permission of court. R.Vol. II, at 25–17.

The defendant stipulated at the hearing that he failed to report the arrest to his probation officer and that he acted as an informant without permission of the court. R.Vol. II, at 4.

The district court found that the agreement the defendant reached governed state law criminal conduct and had nothing to do with defendant's federal term of supervised release. The district court further found evidence independent of the defendant's statements to establish that he was involved with the distribution of cocaine and was involved with persons who were involved in criminal activity, namely, the defendant's presence after being called by the informant, the high speed chase after the police tried to stop him, and the defendant's behavior after the chase. The court excused the defendant's failure to report his arrest because the defendant might reasonably have believed that he was not required to report the arrest. The court found by a preponderance of the evidence that the defendant was in possession of one ounce of cocaine that was to be delivered during the transaction set up by the police informant. R.Vol. II, at 37–39.

At the sentencing hearing, the district court found that the defendant had committed one Grade A violation of his supervised release by possessing cocaine for distribution and two Grade C violations by violating conditions of supervision (involving himself with others who were involved in criminal activity and failing to receive permission of the court before acting as an informant). The court found by a preponderance of the evidence that the defendant was in actual possession of one ounce of cocaine in the course of the events which led to his arrest on November 3, 1991. The district court followed the policy statements governing revocation of supervised release contained in Chapter 7 of the Sentencing Guidelines, U.S.S.G. § 7B1.4(a), and sentenced the defendant to 21 months imprisonment. R.Vol. II, at 43–49.

■ The first issue presented by the defendant is whether self-incriminating information provided pursuant to an agreement to cooperate with state authorities may be used in a subsequent proceeding to revoke supervised release. The defendant argues that he and the government entered into a cooperation agreement pursuant to U.S.S.G. § 1B1.8 and that the information he provided to the authorities pursuant to that agreement was thereafter improperly used by the government at the hearing to revoke his supervised release.

Our standard of review is de novo as to questions of law. "Pure questions of interpretation of the sentencing guidelines, which are closely analogous to questions of statutory interpretation, are questions of law. We review questions of law *de novo*. *De novo* review requires us to make an independent determination of the issues, similar to that which the trial court makes in its initial ruling." *United States v. Irvin,* 906 F.2d 1424, 1426 (10th Cir.1990) (citations omitted). The district court's factual findings regarding the terms of the cooperation agreement are subject to review under the clearly erroneous standard. *See United States v. Halford,* 948 F.2d 1054, 1056 (8th Cir.1991) (whether the gov-

ernment has made a promise in the context of a plea agreement is a factual question reviewed under the clearly erroneous standard), *cert. denied,* — U.S. —, 112 S.Ct. 1700, 118 L.Ed.2d 410 (1992); *United States v. Andrus,* 925 F.2d 335, 337 (9th Cir.) (the existence of a plea agreement and the terms thereof is a question of fact reviewed under the clearly erroneous standard), *cert. denied,* — U.S. —, 112 S.Ct. 249, 116 L.Ed.2d 204 (1991); *United States v. Fountain,* 776 F.2d 878, 884 (10th Cir. 1985) (whether the government promised immunity in exchange for the defendant's full cooperation is a question of fact).

Section 1B1.8 of the United States Sentencing Guidelines provides:

(a) Where a defendant agrees to cooperate with the government by providing information concerning unlawful activities of others, and as part of that cooperation agreement the government agrees that self-incriminating information provided pursuant to the agreement will not be used against the defendant, then such information shall not be used in determining the applicable guideline range, except to the extent provided in the agreement.

(b) the provisions of subsection (a) shall not be applied to restrict the use of information:

(1) known to the government prior to entering into the cooperation agreement;

(2) concerning the existence of prior convictions and sentences in determining § 4A1.1 (Criminal History Category) and § 4B1.1 (Career Offender);

(3) in a prosecution for perjury or giving a false statement; or

(4) in the event there is a breach of the cooperation agreement by the defendant.

U.S.S.G. § 1B1.8.

Defendant notes in his brief that to invoke the protection of § 1B1.8 at sentencing, the facts must show: (1) defendant agreed to cooperate with the government

by providing information concerning unlawful activities of others; (2) self-incriminating information was disclosed by the defendant during the cooperation; (3) as part of the cooperation the government agreed that self-incriminating information obtained during cooperation would not be used against the defendant; and (4) the information disclosed was not known to the government prior to entering into the cooperation agreement. The defendant argues that the agreement he reached with the state authorities is binding on the United States government.

Leaving aside the broader question of when or whether a cooperation agreement with state authorities could bind the United States,[1] we agree with the district court that the agreement reached here did not, as a factual matter, bind the United States. The district court found as a fact that the agreement between the defendant and local authorities governed only state criminal conduct and did not involve the United States government. That factual finding is not clearly erroneous. The cooperation agreement was reached with state authorities and protected the defendant only from state criminal proceedings. The agreement was not known to representatives of the United States and the United States did not agree to be bound by it. Consequently, there was no violation of any bargain between the United States and the defendant.

■ The second issue presented by the defendant is whether the evidence was sufficient to sustain the district court's finding that defendant committed a Grade A violation of his supervised release by illegally possessing cocaine. The district court must find by a preponderance of the evidence that the defendant violated a condition of his supervised release. 18 U.S.C. § 3583(e)(3). The district court's factual findings are reviewed under a clearly erroneous standard. *See United States v. Werking,* 915 F.2d 1404, 1406 (10th Cir. 1990).

**1.** *See United States v. Shorteeth,* 887 F.2d 253, 257 (10th Cir.1989) ("One of § 1B1.8's most important advantages is that *federal* prosecutors

can now assure potential informants that their statements will in no way be used against them.") (emphasis added).

The defendant argues that the court erred by finding a Grade A violation of supervised release. Defendant stipulated to two Grade C violations (failing to report an arrest and failing to obtain permission to act as an informant). The violation of associating with individuals involved in criminal activity is also a Grade C violation. Defendant asserts that he should only have been sentenced for the Grade C violations. With a criminal history category II, a Grade C violation of supervised release would result in a guideline range of 4 to 10 months imprisonment. U.S.S.G. § 7B1.4(a) (policy statement).

The district court found that there was sufficient evidence independent of any statements defendant may have made to find the cocaine violation by a preponderance of the evidence. This factual finding is supported by the record and is not clearly erroneous. The evidence presented at the hearing showed that the defendant was engaged in a drug transaction involving a police informant. An informant who knew the defendant set up a cocaine transaction by telephone. The informant arranged to have the defendant deliver an ounce of cocaine. The defendant arrived at the appointed place at the appointed time, in a vehicle meeting the description of that provided by the informant. When police moved in to arrest the defendant, he fled, leading the police on a high speed chase which ended when defendant wrecked his vehicle. The defendant fled on foot and hid in a wooded area and was not found until the police brought in a helicopter equipped with a heat detecting device. These facts are sufficient to find by a preponderance of the evidence that the defendant possessed cocaine for distribution to the informant. The court's finding of a Grade A violation of the terms of supervised release was not clearly erroneous.

AFFIRMED.