16 F.3d 417
NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Charles Truett EMERSON, Defendant-Appellant.
 No. 93-6064.
 United States Court of Appeals, Tenth Circuit.
 Feb. 3, 1994.
 
 ORDER AND JUDGMENT[1]
 Before KELLY, Circuit Judge, GODBOLD, Senior Circuit Judge,[2] and McWILLIAMS, Senior Circuit Judge.
 
 
 1
 This case was initially set for oral argument. However, counsel for both parties thereafter waived oral argument. After examining the briefs and appellate record, this panel has determined that oral argument would not materially assist the determination of this appeal. The cause is therefore submitted without oral argument. See Fed. R.App. P. 34(a); 10th Cir. R. 34.1.9.
 
 
 2
 By indictment Charles Truett Emerson was charged in the United States District Court for the Western District of Oklahoma with five counts of mail fraud. 18 U.S.C. 1341 (1988 & Supp. 1992). A jury convicted Emerson on all five counts, and he was sentenced to five years imprisonment on each count, with the proviso that he be confined in a jail-type institution for six months and that the balance of the five year sentence be suspended, said terms to be served concurrently. Emerson appeals his several convictions and the sentence imposed thereon.
 
 
 3
 On appeal Emerson advances three grounds for reversal: (1) the United States was barred from prosecuting the present case by virtue of a "non-prosecution agreement" entered into by the United States and Emerson in connection with a civil proceeding brought against Emerson by the United States involving the same subject matter; (2) error by the district court in denying Emerson's pretrial motion to dismiss the indictment for failure to state a mail fraud violation; and (3) error by the district court in excluding evidence proffered by Emerson that in 1975 he had been acquitted because of insanity in a criminal proceeding brought against him in the United States District Court for the Western District of Oklahoma. We are not persuaded and therefore affirm.
 
 
 4
 Emerson placed advertisements with numerous radio stations and newspapers informing listeners and readers of his "work-at-home" program.[3] In connection therewith, the listener or reader who responded to these ads was asked, inter alia, to send $10 and receive further information concerning the program wherein they could earn up to $1,000 a day by working at home. There was evidence of massive mailings by Emerson, showing, inter alia, the posting of 1,000 pieces of mail on one occasion, and, by way of further example, the posting of 31,785 pieces of mail between April 6, 1987 and December 11, 1987.
 
 
 5
 The Postal Service, after receiving complaints from persons who had mailed their $10 to Emerson, began investigating the matter. After its investigation, a representative of the Postal Service met with Emerson in an effort to persuade him from continuing his operation, but such effort was unsuccessful. Accordingly, a complaint was filed by the General Counsel for the United States Postal Service against Emerson with the United States Postal Service. In that complaint the General Counsel stated that he had "reason to believe that [Emerson] ... is engaged in a scheme or device to obtain money or property through the mails by means of false representations, in violation of 39 U.S.C. 3005," and then set forth the factual basis for his belief. The complaint related to persons who had sent money to Emerson in response to the ads and did not relate to radio stations or newspapers which, at Emerson's request, had carried the ads. In connection therewith, the General Counsel sought a cease and desist order.
 
 
 6
 Thereafter the Postal Service filed in the United States District Court for the Western District of Oklahoma a complaint for injunctive relief, seeking an order directing detention by the Postal Service of all mail coming to Emerson or his company, Cottage Industries. When that complaint came on for hearing the parties, with prompting from the district judge, entered into an agreement whereby, inter alia, Emerson agreed to cease and desist. Paragraph 9 of the agreement reads as follows:
 
 
 7
 9. This agreement relates exclusively to the matter involved herein, and the execution of this agreement shall not constitute a defense or release of Respondent of any responsibility for violation of any other statute.
 
 
 8
 Some time later the present indictment was returned by a grand jury sitting in the United States District Court for the Western District of Oklahoma. Common to all five counts in the indictment was the general allegation that Emerson devised a scheme and artifice to defraud numerous radio stations and newspapers by placing with them misleading advertising knowing that the promises contained therein were false and fraudulent and in connection therewith had used the mails. Each of the five counts concerned a different radio station, and in each count there was the allegation that Emerson had used the mail by depositing in the mail an advertising request to the particular station to run the advertising above referred to, and that Emerson had not paid the radio stations their charge for carrying his advertisements.
 
 1. Non-Prosecution Agreement
 
 9
 As stated, prior to trial Emerson filed, inter alia, a motion to dismiss the grand jury indictment on the ground that the government had entered into an agreement not to prosecute Emerson on any criminal charge based on his activities in connection with Cottage Industries, the trade name used by Emerson. The basis for this argument was that in connection with the civil proceeding brought in the United States District Court for the Western District of Oklahoma regarding the $10 fee he had been receiving from listeners and readers of his radio and newspaper ads, he and the government had entered into a consent decree wherein the government agreed, inter alia, not to prosecute him criminally for any violation of other statutes arising out of his operation of Cottage Industries. The district court held an evidentiary hearing on this motion at which time all interested parties testified at length. At the conclusion thereof, the district court denied Emerson's motion to dismiss and, on appeal, Emerson urges the district court's order denying his motion to dismiss as reversible error.
 
 
 10
 At the evidentiary hearing on the motion to dismiss, Emerson and the attorney who represented him in the injunctive proceeding in Oklahoma, testified, as did the postal inspector who had handled Emerson's case and the Assistant United States Attorney who was representing the United States in the injunctive proceeding. From the transcript of that hearing we learn that the complaint filed with the Postal Service by the General Counsel, as well as the injunctive action brought later in Oklahoma federal court, were based on complaints made by the listeners and readers of Emerson's ads who had sent Emerson, i.e. Cottage Industries, $10 each. The indictment in the instant case charged Emerson, in essence, with devising a scheme to defraud five radio stations with whom he had placed ads and using the mails in connection therewith.
 
 
 11
 At the time of the injunctive hearing in the Oklahoma federal court, the Federal Bureau of Investigation (FBI) was conducting its own criminal investigation into Emerson's conduct towards the media with whom he had placed ads, and the FBI was not, as such, concerned with Emerson's conduct with those persons sending him $10. In other words, the Postal Service was concerned with the complaints of the persons who had sent Emerson $10 and had received nothing substantial in return, for which the Postal Service in a civil proceeding sought a cease and desist order; whereas the FBI at the same time was conducting a criminal investigation, which the Postal Service was aware of, to determine whether Emerson had also defrauded the radio stations and newspapers which had carried his ads.
 
 
 12
 As indicated, the judge in the injunctive proceeding, who, incidentally did not preside in the instant criminal proceeding, recessed the injunctive proceeding and suggested that the parties "go out and work it out." The parties, i.e. Emerson and his attorney, the postal inspector and the Assistant United States Attorney who was handling the injunctive proceeding, retired to an office adjacent to the courtroom and in one and one-half hours thought they had "worked it out."
 
 
 13
 As indicated, the injunctive proceedings ended with a so-called consent decree. By that agreement Emerson agreed, inter alia, to return all monies received from any senders and also agreed that the postmaster at Norman, Oklahoma could hold all mail addressed to Cottage Industries and that any mail containing $10 would be returned to the sender. As previously indicated, paragraph 9 of the consent decree provided that the "agreement" related exclusively "to the matter involved herein," and did not constitute a release or defense of Emerson "of any responsibility for violation of any other statute."
 
 
 14
 Notwithstanding the provision in paragraph 9 in the consent decree, Emerson argued before the district court in the instant case that there was a mutual understanding between himself and his attorney, on the one hand, and the postal inspector and the Assistant United States Attorney, on the other, that he would not be prosecuted for any criminal offense arising out of his operation of Cottage Industries, which, he claimed, would include his conduct towards the five radio stations carrying his ads as well as his conduct towards the various listeners and readers who had sent him $10. In this regard, both Emerson and his attorney testified to that effect. However, the postal inspector and the Assistant United States Attorney testified that the consent agreement, by its own terms, "relates exclusively to the matter involved herein," which did not encompass Emerson's conduct with the five radio stations which were identified in the five counts of the indictment as "victims" of Emerson's scheme to defraud. Both the postal inspector and the Assistant United States Attorney denied that they had promised Emerson "total immunity" for prosecution for all possible criminal offenses arising out of Emerson's operation of Cottage Industries. The Assistant United States Attorney testified that she had no authority to waive the government's right to proceed against Emerson in any criminal proceeding.
 
 
 15
 Based on the record made in the district court, we cannot hold that the district court's order denying Emerson's motion to dismiss based on a promise not to prosecute was clearly erroneous. See United States v. Hall, 984 F.2d 387, 389-90 (10th Cir.1993) (factual findings of the court regarding a cooperation agreement under the United States Sentencing Guidelines are reviewed for clear error), cert. denied, ---- U.S. ----, 113 S.Ct. 2942 (1993); United States v. Halford, 948 F.2d 1054, 1056 (8th Cir.1991) (whether the government has made a promise regarding a plea agreement is a question of fact reviewed for clear error), cert. denied, ---- U.S. ----, 112 S.Ct. 1700 (1992). The district court held that the evidence did not show that the government in the civil "cease and desist" proceeding had agreed to forego all criminal prosecution arising out of Emerson's activities through Cottage Industries. In so doing, the district court opined that such was "a wishful interpretation" on the part of Emerson and his counsel, but was not supported by the record. We agree.
 
 2. Sufficiency of the Indictment
 
 16
 Prior to trial, Emerson also filed a motion to dismiss the indictment on the ground that it was vague and failed to state a mail fraud charge as the latter is defined in 18 U.S.C. 1341. The district court denied that motion and such is now urged on appeal as ground for reversal. We disagree. The present indictment is perhaps not a model, but it is sufficient to withstand a motion to dismiss. Fed.R.Crim.P. 7(C)(1) provides that an indictment "shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." The present indictment meets that test.
 
 
 17
 The gist of the indictment is that Emerson placed ads with the five radio stations never intending to pay for them, which he didn't, and that in connection with his deception and fraud used the mails. The mail fraud statute encompasses false promises and misrepresentation "as to the future as well as other frauds involving money or property." McNally v. United States, 483 U.S. 352, 359 (1986); Roberts v. Wells Fargo AG Credit Corp., 990 F.2d 1169, 1172 (10th Cir.1993); Wagstaff v. Protective Apparel Corp., 760 F.2d 1074, 1077 (10th Cir.1985). We reject any suggestion that the indictment could be interpreted as including both fraud against consumers and fraud against radio stations. Clearly the indictment related only to the five radio stations and not to so-called consumers. In this general connection, we parenthetically note that on appeal Emerson does not contend that the evidence adduced at trial is insufficient to support the guilty verdicts returned by the jury.
 
 3. 1975 Acquittal
 
 18
 Emerson sought to show that in 1975 when he was charged with a mail fraud charge in the United States District Court for the Western District of Oklahoma a jury found him not guilty by reason of insanity, and that he had not since been "judicially restored."[4] It was counsel's belief that such evidence would tend to show that Emerson did not have the capacity to enter into a contract with any of the five radio stations. The district court rejected this proffer on the ground that such was not material to any issue in the present proceeding. We agree. In this regard, it should be noted that Emerson did not plead insanity in the present case. Further, this was not a "contract" case. Rather, Emerson was charged with using the mails in connection with a scheme to defraud.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. ---- F.R.D. ----
 
 
 [2]
 Honorable John C. Godbold, Senior Circuit Judge for the Eleventh Circuit, sitting by designation
 
 
 [3]
 The ad read as follows:
 "Hiring today. Top pay. Work at home. No experience needed. Write Cottage Industries. 121 N.W. 24th Ave., Suite 222, Norman, OK 73069."
 
 
 [4]
 In March, 1975, Emerson was indicted for scheming to defraud and obtain money for public land by use of the mail