**F I L E D**

**UNITED STATES COURT OF APPEALS**

**JUL 1 1999**

**TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JAMES KENNETH WARD, a/k/a Ken Ward,
a/k/a Dean Connelly, a/k/a Jack Riemer,

    Defendant-Appellant,

No. 99-8006
(D. Wyo.)
(D.Ct. No. 95-CR-45)

_____

**ORDER AND JUDGMENT**[*]

_____

Before **BALDOCK, BARRETT**, and **BRORBY**, Circuit Judges.

_____

    After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

    Defendant-Appellant, James Kenneth Ward, appeals the district court's

---

[*] This order and judgment is not binding precedent except under the doctrines of
law of the case, *res judicata* and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 36.3.

decision to revoke his supervised release and impose a new term of imprisonment and supervised release. We exercise jurisdiction pursuant to 28 U.S.C. § 1291, and affirm.

BACKGROUND

Mr. Ward was convicted in December 1995 for stealing and reselling farm equipment and vehicles. The court sentenced him to three concurrent terms of twenty-five months in prison, followed by a three-year supervised release. Mr. Ward served the prison term and began his supervised release October 27, 1997. Almost one year later, Idaho authorities charged him with felony domestic violence in an Idaho state court. After learning of the alleged offense, Mr. Ward's federal probation officer filed a Petition on Supervised Release informing the district court of Mr. Ward's state domestic violence charge and requesting the court revoke his supervised release. At the revocation hearing, the district court heard testimony from several witnesses regarding the events surrounding the alleged domestic violence incident. We provide the following summary of the relevant testimony.

On the morning of October 17, 1998, Sergeant James Walker, a police officer in St. Anthony, Idaho, responded to a disturbance reported at a house

-2-

where Mr. Ward resided with his girlfriend, Jeanni Kollander. When Officer Walker arrived at the scene, he first encountered Bert Flamm, the landlord and neighbor who made the call to the police. Mr. Flamm testified that earlier that morning, his wife told him about some commotion and yelling at the residence next door. Mr. Flamm also explained that Payton Carlson, a young friend of his son who was staying with them, told him he heard a disturbance next door and saw a woman – later identified as Ms. Kollander – outside near a vehicle calling for help and apparently in distress. According to Mr. Flamm, Mr. Carlson also reported seeing a man exit the neighbor's residence and carry Ms. Kollander back inside. Based on this information, Mr. Flamm went next door to see if everything was all right, but Ms. Kollander refused to let him in the house or come outside to speak with him. This strange response, coupled with earlier reports of what transpired, caused Mr. Flamm to fear for Ms. Kollander's safety and prompted his call to the police.

After talking with Mr. Flamm, Officer Walker approached the neighbor's residence and knocked on the door. Several minutes passed before Ms. Kollander responded. However, she still refused to open the door or come outside, and talked from behind the closed door. Concerned with her safety, and not knowing whether someone was holding Ms. Kollander against her will,

Officer Walker persisted in his request for her to open the door. Finally, she opened it slightly. ( *Id*. at 19, 48.) Through the opening, Officer Walker saw Mr. Ward standing directly behind Ms. Kollander. Officer Walker also noticed a vertical gash in Ms. Kollander's forehead. Fearing she was in danger, he pushed the door open, took Ms. Kollander by the arm, and asked her to step outside. Mr. Ward immediately objected and attempted to physically restrain Ms. Kollander from leaving the residence. In response, Officer Walker drew his "pepper mace" spray and commanded Mr. Ward not to interfere. He then escorted Ms. Kollander to his waiting patrol car. As they left the house, she thanked Officer Walker profusely and begged him not to make her go back.

Leaving Ms. Kollander in the patrol car with Mr. Flamm, Officer Walker returned to the house to question Mr. Ward. He approached the house and knocked, but Mr. Ward refused to open the door. Concerned Mr. Ward might be trying to secure a weapon, Officer Walker opened the door himself. He found Mr. Ward standing just inside the entryway and immediately noticed blood on both Mr. Ward's arms and scratch marks on his shoulders. Officer Walker asked Mr. Ward what happened. Receiving no response to his questions and believing Mr. Ward committed some act of violence against Ms. Kollander, Officer Walker placed him under arrest for domestic battery.

Based on this testimony, the district court found the government established by a preponderance of the evidence that Mr. Ward committed a material violation of the conditions of his supervised release. The court then revoked his supervised release and ordered Mr. Ward to serve an additional term of fifteen months in prison followed by a nine-month term of supervised release. In addition to reiterating the previous conditions of supervised release, the court prohibited Mr. Ward from being employed in the sale, procurement, or transportation of heavy equipment or farm equipment while on supervised release. [1]

DISCUSSION

Mr. Ward raises three challenges to the district court's revocation of supervised release and resentencing. First, he contends the district court violated his due process rights by relying on certain hearsay testimony at the revocation hearing. Second, he claims the court improperly based its finding that he violated the conditions of his supervised release on insufficient evidence.

---

[1] Mr. Ward filed a motion to supplement the record on appeal to include an Order dated January 8, 1999, from the Seventh Judicial District Court for the State of Idaho, dismissing the domestic violence charges against him without prejudice. Because the Idaho court's decision to dismiss did not occur until after the revocation hearing before the district court, we find the order of dismissal has no bearing on our review of the district court's prior, independent findings. For this reason, Mr. Ward's motion to supplement the record is denied.

Finally, he argues the court erred when it sentenced him to a new term of imprisonment and supervised release which included the additional employment-related condition. We address these contentions in turn.

A.    Hearsay – Due Process

Mr. Ward challenges the admission of several out-of-court declarations during the revocation hearing, claiming the court's decision to admit this testimony violated his due process rights to confront and cross-examine adverse witnesses. He identifies the inappropriately admitted hearsay as: (1) Mr. Flamm's testimony regarding the statement Payton Carlson made to him about seeing Ms. Kollander outside her house crying for help and then seeing a man carry her back inside the house; (2) the testimony of Officer Walker regarding what the police dispatcher told him about the substance of Payton Carlson's statement to Mr. Flamm; and (3) Officer Walker's testimony that Dr. Blackburn, Ms. Kollander's treating physician, told him Ms. Kollander stated her injuries occurred from falling down stairs.

Although Mr. Ward acknowledges the district court's discretion to admit such testimony, he contends the court nevertheless denied him due process because he was never afforded the opportunity to confront and cross-examine

Payton Carlson or the doctor. He also claims that before admitting the out-of-court statements, the court should have balanced the importance of this evidence with (1) the court's own findings, (2) his opportunity to refute the evidence, (3) the consequences of the court's findings, (4) the difficulty and expense of procuring witnesses, and (5) the traditional indicia of reliability borne by the evidence. *See United States v. Walker*, 117 F.3d 417, 420 (9th Cir.), *cert. denied*, 118 S. Ct. 394 (1997).

We emphasize at the outset of our analysis that the Federal Rules of Evidence do not strictly apply in proceedings to revoke supervised release, and the admission of hearsay evidence is permissible so long as it is otherwise reliable and the court balances Mr. Ward's right to confront adverse witnesses against the government's grounds for denying confrontation. *United States v. Frazier*, 26 F.3d 110, 114 (11th Cir. 1997); *see also United States v. Waters*, 158 F.3d 933, 940 (6th Cir. 1998) (ruling that a district court can consider reliable hearsay testimony in a hearing regarding revocation of supervised release); . We review the alleged due process violations *de novo*, *United States v. Clark*, 84 F.3d 378, 381 (10th Cir. 1996), and the district court's assessment of reliability for abuse of discretion. *Waters*, 158 F.3d at 940. However, the findings are subject to a harmless error analysis. *Frazier*, 26 F.3d at 114.

A review of the record in this case shows the district court properly simply determined the Federal Rules of Evidence do not strictly apply to supervised release hearings. However, when faced with hearsay objections, the court neglected to make specific findings of reliability or explicitly balance Mr. Ward's confrontation rights against the government's reasons for not producing the witness. Such omission constitutes error. Nevertheless, we find the error harmless in light of the overwhelming weight of the evidence presented to the district court demonstrating Mr. Ward violated the terms of his supervised release, *see Frazier*, 26 F.3d at 114 (finding harmless the district court's error in failing to make findings on the record concerning the reliability of hearsay testimony or to weigh the defendant's right of confrontation against the government's reasons for not producing the witness), the reliability of the hearsay evidence, and Mr. Ward's failure to show prejudice *see Walker,* 117 F.3d at 420-21.

The reliability of that evidence is apparent from other corroborating uncontested evidence. For example, Mr. Flamm's testimony regarding what Payton Carlson told him about seeing Ms. Kollander outside her house in apparent distress corroborated Ms. Kollander's admission that she had a disagreement with Mr. Ward and ran outside in front of the house while yelling.

Moreover, Officer Walker's testimony about blood on Mr. Ward's arms at the time of arrest is consistent with Payton Carlson's statement about Mr. Ward carrying, or at least touching, Ms. Kollander, who was bleeding from a wound on her forehead. With regard to Officer Walker's testimony containing Dr. Blackburn's statement about what Ms. Kollander reported to hospital staff as the cause of her injuries, we find the record contains no basis for doubting his ability as a law enforcement officer to accurately report what he learned in the course of his investigation, *see Taylor v. United States Parole Comm'n*, 734 F.2d 1152, 1156 (6th Cir. 1984) (dissenting opinion), and Mr. Ward does not present any serious challenge to the reliability of the statement.

Finally, we believe, given the weight of the non-hearsay evidence establishing Mr. Ward violated his supervised release, it is unlikely the admission of the hearsay testimony prejudiced Mr. Ward's case and produced a different result than would have occurred without it. This absence of prejudice, combined with the weight of the evidence, convinces us that although the district court failed to make specific findings of reliability or conduct the required balancing test, such error was harmless.

B.    Challenge to Supervised Release Revocation

Mr. Ward argues that insufficient evidence supports the district court's finding he committed an act of domestic violence in violation of the terms of his supervised release. In support, he disregards the overwhelming inculpatory evidence in the record and relies solely on evidence favorable to him.

We review the district court's decision to revoke a term of supervised release for abuse of discretion, *United States v. McAffee*, 998 F.2d 835, 837 (10th Cir. 1993), and its subsidiary factual findings for clear error, *United States v. Hall*, 984 F.2d 387, 389 (10th Cir.), *cert. denied*, 508 U.S. 965 (1993). In order to revoke Mr. Ward's term of supervised release, the trial court must find by a preponderance of the evidence that he violated a condition of his release. 18 U.S.C. § 3583(e)(3). The trial court, as the trier of facts, has the exclusive function of appraising credibility, determining the weight to give testimony, drawing inferences from the facts established, and reaching ultimate conclusions of facts. *United States v. Leach*, 749 F.2d 592, 600 (10th Cir. 1984); *see also Thunder Basin Coal Co. v. Southwestern Pub. Serv. Co.*, 104 F.3d 1205, 1212 (10th Cir. 1997). In reviewing the sufficiency of the evidence, we must view all of the evidence, both direct and circumstantial, and all reasonable inferences to be drawn therefrom, in the light most favorable to the government. *Leach*, 749 F.2d at 600.

As an initial matter, we acknowledge no *direct* evidence shows Mr. Ward committed an act of domestic violence against Ms. Kollander. In fact, the only witnesses to Ms. Kollander's injury – Mr. Ward and Ms. Kollander – testified the gash on her forehead resulted from an accident in the home. However, sufficient and highly persuasive *circumstantial* evidence clearly contradicts Mr. Ward's and Ms. Kollander's innocent explanations of the events leading to the domestic violence charge. For instance, the evidence shows Ms. Kollander suffered the significant injury to her head around the same time she argued with Mr. Ward and ran outside crying and in distress. In addition, the hearing testimony establishes that during this incident, a man – presumably Mr. Ward – came out and carried her back inside the house. This coincides with the blood on Mr. Ward's arms and scratch marks on his shoulders, and indicates some sort of physical struggle had taken place shortly before his arrest. The record indicates Ms. Kollander refused to open the door to talk to Mr. Flamm when he went to check on her, and he testified that "[s]he did not sound like she was okay" when she spoke to him through the door. The record also contains highly persuasive evidence of Ms. Kollander's immediate, profuse, and repeated thanks to Officer Walker for removing her from the house and her urgent plea not to make her return. Further testimony indicated that Ms. Kollander profusely thanked Mr. Flamm immediately after the incident and warned him Mr. Ward was extremely

-11-

violent and dangerous when he was angry, and would hurt him and his family if he saw him helping her. Finally, even though Ms. Kollander testified on Mr. Ward's behalf and denied he committed any act of physical violence against her, her earlier conflicting statements and other evidence show she lacks credibility and most likely lied to protect him. [2]

For instance, at the hearing, Ms. Kollander testified the gash on her forehead resulted from her angrily turning around and hitting her head on a door jamb. This contradicts her statement to hospital staff that it resulted from falling down some stairs.

This circumstantial evidence, and the reasonable inferences drawn therefrom, together with the district court's apparent credibility determinations, form a sufficient basis for the district court's conclusion. Thus, we affirm the

---

[2] When considering Ms. Kollander's testimony, the district court was no doubt aware of the unfortunate, but frequent tendency of domestic abuse victims to refuse to cooperate in the prosecution of the abusers after the incident has passed and to even lie to protect them in some cases. This phenomenon is evident in this case from Ms. Kollander's conduct. She initially thanked Mr. Flamm and the officer for removing her from the house and begged not to go back; then suddenly she changed her demeanor and requested to return to the house. In situations like this, the court must often discredit the potentially fabricated testimony of the victim exonerating the perpetrator, and focus on other evidence in order to accurately assess what occurred.

district court's finding that the government met its burden of showing, by a preponderance of the evidence, that Mr. Ward committed an act of domestic violence in breach of the conditions of his supervised release.

C.     Resentencing

Mr. Ward argues the district court improperly sentenced him to another term of imprisonment, a new term of supervised release, and a new condition of his supervised release. We review *de novo* the district court's sentencing decision following revocation of supervised release. *See United States v. Rockwell*, 984 F.2d 1112, 1114 (10th Cir.), *cert. denied*, 508 U.S. 966 (1993).

The guidelines for the imposition and revocation of supervised release, provide in relevant part that the district court may "revoke a term of supervised release, and require the defendant to serve in prison all or part of the term of supervised release ... without credit for time previously served on post-release supervision" on a finding by a preponderance of the evidence that the defendant "violated a condition of supervised release." 18 U.S.C. § 3583(e)(3). In addition, "[w]hen a term of supervised release is revoked and the defendant is required to serve a term of imprisonment ..., the court may include a requirement that the defendant be placed on a term of supervised release after imprisonment."

-13-

18 U.S.C. § 3583(h). These provisions plainly validate the district court's decision to impose both a prison term and another term of supervised release following revocation.

We review separately, however, the court's imposition of a new condition of supervised release prohibiting Mr. Ward from being employed in the sale, procurement, or transportation of farm or heavy equipment. A special condition of supervised release prohibiting a defendant from engaging in a specified occupation or profession must satisfy the following general requirements: (1) the condition must reasonably relate to the circumstances of the offense and the history and characteristics of the defendant; (2) the condition must involve no greater deprivation of liberty than is reasonably necessary, and (3) the condition must be consistent with any pertinent policy statements by the Sentencing Commission. *See* 18 U.S.C. § 3583(d); U.S.S.G. § 5F1.5; *United States v. Edgin*, 92 F.3d 1044, 1048 (10th Cir.1996), *cert. denied,* 519 U.S. 1069 (1997) (interpreting § 3583(d) and § 5F1.5).

Our review of this case persuades us that the court's decision to impose the additional condition prohibiting Mr. Ward from selling farm or heavy equipment is authorized by § 3583(h) and meets all the necessary requirements. Mr. Ward

was originally convicted on various charges stemming from stealing and re-selling farm and heavy equipment. A new condition of supervised release limiting his involvement with this type of equipment is clearly a wise preventative measure bearing a direct relationship to the nature and circumstances of his original offense. It also involves no greater deprivation of liberty than necessary to meet the needs of deterring future criminal conduct and protecting the public. Accordingly, we affirm the sentence in its entirety.

CONCLUSION

For the reasons stated above, we **AFFIRM** the decision of the district court.

**Entered by the Court:**

**WADE BRORBY**
United States Circuit Judge

-15-