FILED
United States Court of Appeals
Tenth Circuit

**January 22, 2009**

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JONATHAN A. WALDON,

    Defendant-Appellant.

No. 08-8025

(D.C. No. 03-CR-091-B)
(D. Wyoming)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE, BALDOCK** and **HOLMES**, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is, therefore, submitted without oral argument.

Defendant Jonathan Waldon appeals the district court's revocation of his supervised release. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

affirm.

I.

In 2004, Waldon was convicted of attempted bank robbery and sentenced to a term of imprisonment of fifty-seven months, to be followed by a three-year term of supervised release. Waldon was released from custody and commenced his term of supervised release on January 31, 2008. Under the terms of his supervised release, Waldon was expressly prohibited from "commit[ting] another federal, state or local crime." ROA, Vol. 1, Doc. 42 at 2.

On February 25, 2008, Waldon visited the Laramie County Library in Cheyenne, Wyoming. While there, Waldon, by his own admission, engaged in conversation with, and passed two written notes to, K.I., a twelve-year-old girl. The first contact between Waldon and K.I. occurred at the sign-in desk for computers. There, Waldon initiated conversation with K.I., allegedly asking her if she liked sports. After K.I. and Waldon were each seated at and using separate computers, Waldon handed K.I. a note with his name, address, and telephone number on it. Shortly thereafter, Waldon handed a second note to K.I. that read: "I'm scared to talk to you while your dad is here, so could you go out to the bathroom now?" Waldon then exited the computer room, followed shortly thereafter by K.I. Waldon and K.I. conversed near a set of bookshelves by the library's bathroom. According to K.I., Waldon asked her how old she was and she informed him she was twelve years old. Waldon allegedly told K.I. they

-2-

would talk on the telephone and get to know each other, would have some dinner, and then he would take her into his room and have sex with her. K.I. returned to the computer area and informed her father, who had accompanied her to the library and was using a separate computer, regarding what had transpired. K.I.'s father contacted the Cheyenne Police Department. Lyle Finch, an officer with the Cheyenne Police Department, responded to the call and interviewed K.I. and her father regarding the incident. Finch subsequently issued a citation to Waldon for disturbing the peace by engaging in improper or indecent behavior in violation of Cheyenne Municipal Code § 9.08.010(A)(7).

Waldon's probation officer, Paul Ricketts, investigated the matter. In doing so, Ricketts reviewed a videotape from the library that showed the encounter between Waldon and K.I. in the library's computer room. Ricketts also spoke with Waldon, who admitted having contact with K.I., including asking her to dinner, but denied any discussion of sex.

On February 27, 2008, Ricketts petitioned the district court to issue a no bail warrant for Waldon's arrest and to revoke his term of supervised release. Id., Doc. 42 at 1. In support of his petition, Ricketts alleged:

> **Violation No. 1 - Mandatory Condition No 1**
> While on supervised release, the defendant shall not commit another federal, state or local crime.
>
> **Nature of Noncompliance**
> On February 25, 2008, at approximately 4:30 p.m., the defendant was at the Laramie County Library in Cheyenne, Wyoming. While in the

computer room, the defendant passed two notes to a 13-year-old female. One note provided his name and address. The second note stated, "I'm scared to talk to you while your dad is here, so could you go out to the bathroom now?"

The defendant did meet with the 13-year-old female in a more secluded area of the library where he asked her to go to his residence for dinner and then sex. The minor female then reported the incident to her father.

Cheyenne Police responded to the incident and later met with the defendant at his residence. They issued the defendant a citation for Rude or Indecent Behavior in violation of Cheyenne Municipal Code 9.08.010(A)(7), which states as follows:

> No person shall cause, or be instrumental in causing, any disturbance of peace in the city. Any person or assemblage of persons shall be deemed guilty of disturbance of the peace if they shall: Perform any act or gesture of rude, improper or indecent behavior, directed at another and calculated to provoke a breach of the peace.

The Probation Officer charges the defendant with a violation of Wyoming State Statute § 6-2-318, Soliciting to Engage in Illicit Sexual Relations, a felony punishable by a term of imprisonment of not more than five years. Specifically, this statute states the following:

> Except under circumstance constituting sexual assault in the first, second or third degree as defined by W.S. 6-2-302 through 6-2-304, or sexual abuse of a minor in the first, second, third or fourth degree as defined by W.S. 6-2-314 through 6-2-317, anyone who has reached the age of majority and who solicits, procures or knowingly encourages anyone less than the age of fourteen (14) years, or a person purported to be less than the age of fourteen (14) years, to engage in sexual intrusion as defined in W.S. 6-2-301 is guilty of a felony, and upon conviction shall be imprisoned for a term of not more than five (5) years.

-4-

Id. at 2.

The district court conducted a hearing on the petition on March 4, 2008, during which the government presented testimony from Ricketts and Finch. At the conclusion of the hearing, the district court concluded that it "need[ed] to hear from the father and . . . this child." Id., Vol. 5 at 48. The following day, March 5, 2008, the government presented testimony from K.I. and her father. On March 20, 2008, the district court found Waldon's actions sufficient to justify revocation of his supervised release. More specifically, the district court found that Waldon's actions constituted a violation of Cheyenne Municipal Code § 9.08.010(A)(7). In turn, the district court sentenced Waldon to a term of imprisonment of eighteen months, to be followed by an eighteen-month term of supervised release.

## II.

Waldon contends on appeal that the district court abused its discretion in revoking his supervised release. "We review orders revoking supervised release for an abuse of discretion." United States v. Hammonds, 370 F.3d 1032, 1034 (10th Cir. 2004). In order to revoke a defendant's term of supervised release, a district court "must find by a preponderance of the evidence that the defendant violated a condition of his supervised release." United States v. Disney, 253 F.3d 1211, 1213 (10th Cir. 2001). "The district court's factual findings are reviewed

under a clearly erroneous standard." United States v. Hall, 984 F.2d 387, 390 (10th Cir. 1993). "Legal questions relating to the revocation of supervised release are reviewed de novo." Disney, 253 F.3d at 1213.

Waldon asserts a series of arguments regarding his alleged solicitation of sex from K.I. To begin with, he argues that the district court "determined that there was no[t] sufficient evidence of the central accusation" that he solicited sex from K.I. Aplt. Br. at 8. Waldon also argues, relatedly, that the testimony of K.I. and her father was "in conflict in important respects" with regard to the alleged solicitation, K.I.'s credibility was suspect, and the evidence ultimately suggests that she fabricated a story about Waldon soliciting sex from her. Id. We conclude it is unnecessary to address these arguments in any detail, however, because the district court did not make any specific factual findings regarding the alleged solicitation.

Waldon next argues that the district court ultimately based its decision to revoke his supervised release upon "inappropriate conduct toward a minor," i.e., passing her two notes and engaging in conversation with her. Id. at 18. "As a result," Waldon argues, the "revocation was based upon matters neither charged nor constituting violations of [his] supervised release." Id. at 13.

Although Waldon correctly notes that the district court revoked his supervised release based upon on a finding that Waldon's conduct disturbed the peace in violation of Cheyenne Municipal Code § 9.08.010(A)(7), Waldon is

-6-

mistaken in suggesting that this was "neither charged" in the petition to revoke "nor constitut[ed]" a violation of his supervised release. Id. The petition to revoke charged Waldon with violating "Mandatory Condition No 1" of his supervised release, which prohibited him from "commit[ting] another federal, state or local crime." ROA, Vol. 1, Doc. 42 at 2. The petition to revoke further noted that Waldon had been issued a citation by the Cheyenne Police for violating Cheyenne Municipal Code § 9.08.010(A)(7). Thus, the petition to revoke alleged, and the district court expressly found, that Waldon violated "local" law in violation of the conditions of his supervised release.

Lastly, Waldon argues that, to the extent the district court based its decision to revoke on a finding that he violated Cheyenne Municipal Code § 9.08.010(A)(7), there was insufficient evidence to support such a finding. We decline, however, to review this argument because it was raised for the first time on appeal in Waldon's appellate reply, and there is no indication in the record on appeal that he raised any such challenge below. See, e.g., United States v. Gonzales, 531 F.3d 1198, 1203 n.1 (10th Cir. 2008) (declining to review two issues raised by criminal defendant for the first time in his appellate reply brief); Stump v. Gates, 211 F.3d 527, 533 (10th Cir. 2000) (noting that when the appellant raises an issue for the first time in his or her reply brief, it "robs the appellee of the opportunity to demonstrate that the record does not support [the] appellant's factual assertions and to present an analysis of the pertinent legal

precedent that may compel a contrary result.”).

AFFIRMED.

Entered for the Court


Mary Beck Briscoe
Circuit Judge